Paul GOMEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–98–00995–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 20, 1999.

Luis R. Vera Jr., Law Offices of Luis R. Vera Jr., & Associates, P.C., San Antonio, for Appellant.

Anton Hackebeil, Dist. Atty., Uvalde, Jim Vollers, Austin, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: ALMA L. LÓPEZ, Justice.

A jury found Paul Gomez guilty of sexual assault of a child and sentenced Gomez to five years in prison. Gomez challenges his conviction in this appeal.

### Background

At the time of the conduct alleged in the indictment, Paul Gomez and his wife ran a foster home for delinquent boys in Medina County. In addition to caring for various boys placed at the home, Gomez coached teenage girls seeking to improve their pitching skills. After coaching sessions, Gomez often gave the girls massages.

In the case below, the State alleged that Gomez sexually assaulted one of the girls, fourteen year old S.M. At trial, S.M. testified that Gomez told her that her pitching skills would be improved if he inserted a hair from her head into her vagina with his penis. S.M. further testified that this procedure was first administered after a coaching session in Gomez's bedroom, and again two or three weeks later in the back seat of Gomez's car.

The remainder of the evidence in the case consisted of supporting witnesses, none of whom had actually seen Gomez have sex with S.M., but each of whose testimony confirmed S.M.'s story about what occurred. No defense witnesses were presented during the guilt/innocence phase of trial. Ultimately, the jury sentenced Gomez to five years in prison.

Following the trial, Gomez moved for a new trial. During the hearing on the motion for new trial (MNT), Gomez's appellate counsel established that Gomez's trial counsel had never tried a felony case before, and that S.M.'s mother and a juror talked during baseball games. In his MNT, Gomez argued the same issues he raises in this appeal: ineffective assistance of counsel and trial error. The trial judge denied the motion.

### Ineffective Assistance of Counsel

Gomez contends that his trial attorney's performance was so deficient that he was denied a fair trial. Specifically, Gomez complains that his attorney failed to request an investigator, failed to properly investigate his case, failed to request an expert witness, failed to obtain adequate pretrial discovery, failed to adequately voir dire the venire, and misunderstood the applicability of the rape-shield law.

■ A claim of ineffective counsel is reviewed under the standard set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To prove ineffective assistance of counsel under *Strickland,* the appellant must prove that his lawyer's conduct was deficient, and that the result of the proceeding would have been different but for the lawyer's deficient performance. *Strickland,* 104 S.Ct. at 2064, 2068. This standard applies to both phases of trial.[1] Whether this standard has been met is judged by the totality of representation rather than by isolated acts or omissions by trial counsel. *Butler v. State,* 716 S.W.2d 48, 54 (Tex.Crim.App.1986). Despite Gomez's complaints about his attorney's performance, the record does not reflect ineffective assistance of counsel.

■ The record reflects that Gomez's attorney had evaluated the evidence against his client, considered the chances for an acquittal and developed alternative theories of culpability in his client's defense. For example, the State notified Gomez prior to trial about four extraneous bad acts that the State might offer as evidence during trial. One of the bad acts took the form of an audio tape recording in which Gomez offered S.M. money to have sex with him. In response, the attorney suggested to the jury that Gomez might be guilty of prostitution, but not sexual assault. As for the other bad acts, Gomez's attorney did not deny the bad acts, but instead focused on the good Gomez contributed to his community to mitigate the impact of the bad acts.

Rather than serving as a passive participant in the State's case-in-chief as Gomez suggests, the attorney actively participated in Gomez's defense by objecting to the State's evidence, cross-examining the State's witnesses, and identifying inconsistencies in the testimonies of State's witnesses. For example, Gomez's attorney explored the inconsistency in the testimonies of State's witnesses Antonio Martinez and S.M. about where S.M. and Gomez had sex in an effort to create a reasonable doubt in the minds of the jurors. Judging the totality of his representation, the lawyer was effective in representing Gomez.

Despite the attorney's overall effectiveness, Gomez has shown areas where his attorney could have improved his performance, but he has not shown that the result of the proceeding would have been different but for his lawyer's performance. *Strickland,* 104 S.Ct. at 2064, 2068. For example, although a defense attorney would ordinarily request an investigator to assist in the preparation for a jury trial on a felony charge, Gomez has not shown that the failure to employ an investigator prejudiced him or that employment of an investigator would have caused a different result. Gomez claims that this failure deprived him of knowledge of witnesses that could contradict assertions made by State witnesses, but he did not produce such witnesses at the hearing on the MNT. Although he suggests as part of his complaint about the attorney's misunderstanding of ˙rape-shield law that Nicole Gonzales and Oscar Gonzales could have challenged S.M.'s veracity for telling the truth, nothing in the record indicates that either individual would have challenged S.M.'s credibility. When questioned during the hearing on the MNT about why he did not use these individuals as defense witnesses, Gomez's trial attorney provided a logical explanation-to avoid showing the jury that his .case was weak.

An equally plausible explanation exists for each of Gomez's complaints about his lawyer's performance. In each case, Gomez has not demonstrated that the result of the proceeding would have been differ-

---

1. *See Hernandez v. State,* 988 S.W.2d 770, 772 (Tex.Crim.App.1999) (stating that *Strickland* applies to punishment phase of trial and overruling *Ex Parte Duffy,* 607 S.W.2d 507 (Tex. Crim.App.1980) which was previously used to evaluate effectiveness of counsel during punishment phase).

ent but for his attorney's performance. We overrule this issue.

## Hearsay

█ Gomez next contends that hearsay testimony was improperly admitted as outcry testimony. Gomez specifically complains about the testimony of Officer Robert West. West is the deputy sheriff who investigated the report of S.M.'s assault. West testified as follows:

> Prosecutor: Without stating specifically or like you are quoting, Bobby, from what they were stating, after having talked with [S.M.] and her mother, Cheryl, did you glean some allegation that Paul Gomez had done anything?
>
> Officer West: Yes, sir, I did.
>
> Prosecutor: What was that?
>
> Officer West: In the first interview that I had with Cheryl she made an outcry that she had been inappropriately touched.
>
> Prosecutor: And the second one?
>
> Officer West: On the second one she said that she had been sexually assaulted.

At this point, Gomez's attorney objected by stating, "[t]hat's hearsay as to what Cheryl Gabehart [S.M.'s mother] said," and the trial judge overruled the objection.

Although it is not clear from the above testimony whether West was testifying about statements made by Cheryl as an outcry witness about what S.M. told her, or whether West mistakenly called S.M. by Cheryl's name in talking about S.M.'s statements to law enforcement authorities, this testimony was not admissible as outcry testimony in either case. Article 38.071 of the Code of Criminal Procedure provides for the admissibility of hearsay testimony of a victim of sexual assault, age twelve years old or younger. Tex.Code Crim. Proc. Ann. art. 38.072, §§ 1, 2 (Vernon Supp.1999). This type of testimony is

referred to as "outcry" testimony. In this case, S.M. was fourteen at the time of the conduct alleged in the indictment, and as a result, the outcry exception to the hearsay rule does not apply to this testimony. Although inadmissible as outcry testimony, Officer West's testimony was properly admitted as nonhearsay to explain how West's initial investigation of alleged child abuse led to his investigation of alleged sexual assault of S.M. Tex.R. Evid. 801 (defining hearsay).[2] Because the complained-about testimony was not hearsay for this purpose, the testimony was properly admitted. Consequently, we overrule this issue.

## Evidence of Other Bad Acts

Gomez also complains about the testimony of State's witness Juanita Martinez. Gomez employed Martinez to prepare meals for the boys in his care on the weekends. At trial, Martinez testified about her duties in caring for the boys and about why she quit her job. Gomez contends that Martinez's testimony contained extraneous bad acts that were improperly admitted into evidence because the State did not comply with the notice requirements of Rule 404(b) of the Texas Rules of Evidence.

█ Although Gomez states in his brief that Martinez testified that Gomez "had not supplied proper meals to children he was responsible for and had encouraged minors in their desire to engage in consensual sexual activity," Martinez did not testify about Gomez encouraging minors to engage in sex. Instead, State's witnesses Antonio Martinez and P.M. testified that Gomez had encouraged them to have sex. As about meals for the boys, Martinez testified that she cooked her own food for the boys because the food in Gomez's house was rotten. This testimony was part of her explanation about why she quit working for Gomez. Gomez's attorney ob-

2. This testimony was presented during Officer West's explanation of how he became involved in the case-*i.e.*, he was initially contact-ed by a probation officer about alleged child abuse and he learned about S.M. during the course of the resulting investigation.

jected to this testimony by stating that the testimony was "highly prejudicial and it has no relevance to the case." The trial judge overruled the objection.

Rule 404(a) of the Texas Rules of Evidence prohibits evidence of extraneous bad acts to prove the defendant's character in order to show action in conformity therein. TEX.R. EVID. 404(a). Such evidence is admissible, however, for other purposes with reasonable notice to the defendant. TEX.R. EVID. 404(b). In this case, the record reflects that this testimony was offered to explain why Gomez asked Martinez to tell the police that none of the girls he coached had ever come into the house.[3] Thus, admissibility turns on notice.

The State did not notify Gomez about its intent to use the complained-about evidence until the day of trial. That notice took the form of a summary of interviews conducted by the Texas Department of Protective and Regulatory Services. This summary contained a plethora of bad acts that painted Gomez as a selfish and cruel man. Martinez's concern about food for the boys was contained within that summary. Under these circumstances, the State did not provide Gomez with reasonable notice. *Neuman v. State,* 951 S.W.2d 538, 539–40 (Tex.App.-Austin 1997, no pet.) (one day is not notice under Rule 404(b)). Without notice, the testimony was not admissible, and as a result, the trial judge erred by overruling Gomez's objection.

As a violation of Rule 404(b), Rule 44.2(b) of the Rules of Appellate Procedure applies to this error. TEX.R.APP. P. 44.2(b). Rule 44.2(b) requires the reviewing court to disregard any error that does not affect a substantial right of the defendant. *Id.* Although a substantial due process right is embodied in Rule 404(b)'s notice requirement, the testimony here could not have impacted that right because Martinez's testimony about the food was greatly outweighed by S.M.'s testimony.

■ S.M. testified in detail about her relationship with Gomez, about how he convinced her that her pitching skills would be improved by the hair-insertion procedure, and why she did not initially tell Officer West that she had sex with Gomez. Additionally, Antonio Martinez's testimony about observing S.M. and Gomez go into a bedroom and close the door confirmed S.M.'s version of what occurred. Further, Juanita Martinez's testimony that girls were often in the bedroom with Gomez, and that Gomez asked her to lie about girls being in the house, supported the testimonies of both Antonio and S.M. Because this evidence directly related to the elements of the offense, it logically carried great weight with the jury. In contrast, the testimony about the food only explained how Martinez became involved in the investigation that ultimately resulted in Gomez's indictment. Under these circumstances, a substantial right was not affected. We overrule this issue.

### Denial of New Trial

■ Shortly after the trial, Gomez obtained new counsel and filed a MNT. After an evidentiary hearing, the trial judge denied the motion. Gomez complains on appeal that the denial was error. On appeal, this ruling is reviewed for an abuse of discretion. *Reyes v. State,* 849 S.W.2d 812, 814 (Tex.Crim.App.1993); *State v. Evans,* 843 S.W.2d 576 (Tex.Crim.App.1992). The reviewing court will reverse the trial court for abuse of discretion only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. *Cantu v. State,* 842 S.W.2d 667, 682 (Tex.Crim.App. 1992).

---

**3.** The record establishes that the boys made the initial complaints about Gomez and that Gomez's relationship with S.M. surfaced during the resulting investigation. At this portion of her testimony, Martinez was obviously referring to that investigation-*i.e.,* "I had a complaint about the food, and that's why I even got in touch with them, you know."

■ In his MNT, Gomez relied in part on the foregoing complaints. He also contended that a member of the venire concealed her knowledge of parties in the case and thus was improperly placed on the jury.[4] Gomez attempted to prove this allegation during the hearing on the MNT through the testimonies of Lucia Ybaniz and Monica Ybaniz, but this testimony did not demonstrate that an improper juror was placed on the jury.

The Ybanizes both testified that they had observed juror Valerie Bogard talking with S.M.'s mother during baseball games and that Bogard was close to State's witness, S.W. Neither witness, however, overheard what was said during the conversations or provided testimony that established a relationship between Bogard and S.M., S.M.'s mother or S.W. The testimony merely established that juror Valerie Bogard had in the past talked with S.M.'s mother and S.W. during baseball games. Nothing in the record indicates that Bogard concealed knowledge of any one involved in Gomez's trial. Instead, Bogard's responses to questions during voir dire indicates that she would have revealed any relationship, had one existed, with witnesses involved in the case. Rather than conceal her knowledge of witnesses in the case, Bogard indicated during voir dire that she knew that S.W. and S.M. played softball, but that she did not really know the girls. Under these circumstances, denying the MNT was not an abuse of discretion.

■ Gomez further argued in his MNT that S.M.'s testimony was improperly bolstered by Robert West's testimony. During trial, Officer West testified that he believed S.M. had told him the truth and he explained to the jury the steps of his investigation. Gomez contends that this testimony constituted improper bolstering

of the victim's testimony, and that as a result, this testimony was improperly admitted into evidence[5] because it implied to the jury that the entire criminal justice system had thus far determined that Gomez assaulted S.M. Despite this contention, West's testimony is more properly characterized a recitation of the course of events that West pursued in conducting his investigation. Rather than serving as bolstering, West's statement that he believed S.M. had told him the truth about being assaulted explained why he pursued his investigation even though S.M. did not initially tell him that she and Gomez had engaged in sex. As a result, denying the MNT was not an abuse of discretion.

Like Gomez's complaints about juror bias and bolstered testimony, Gomez's complaints about ineffective assistance, hearsay testimony, and evidence of extraneous bad acts did not, for the reasons discussed herein, constitute an abuse of discretion. Because the trial court did not abuse its discretion, we overrule this issue.

## Conclusion

Having overruled each of Gomez's issues, we affirm the judgment of the trial court.

Concurring opinion by: TOM RICKHOFF, Justice.

RICKHOFF, Justice, concurring.

I concur in the majority opinion, but write separately to bring to light an appointment system that seems to attract lawyers with marginal competence and a standard of review that insulates these lawyers' mistakes from review.

Once a lawyer passes the bar and is sworn in, he or she is empowered to defend any case to which he or she is as-

---

4. This issue is properly considered as part of Gomez's contention that the trial judge erroneously denied his motion for a new trial because this issue was not preserved at trial.

5. Like Gomez's complaint about juror bias, his complaint about bolstering was not preserved at trial and therefore is properly considered as part of his complaint about the denial of the MNT.

signed. I do not share the view that a lawyer should be presumed competent merely because he or she holds a license. In this case, the indigent defendant was appointed a lawyer who had never conducted a jury trial of any kind or any felony criminal trial. Although the lawyer made some mistakes, he did an admirable job considering his lack of experience. Recently, however, and with increasing frequency, we have seen records clearly demonstrating ineffectiveness of counsel. *See, e.g., Mitchell v. State,* 974 S.W.2d 161 (Tex.App.-San Antonio 1998), *vacated & remanded,* 989 S.W.2d 747 (Tex.Crim.App. 1999). While this is a topic thoroughly studied by the bar, I believe the legislature should consider the issue as well. At the appellate-court level, there is little we can do to ensure effective assistance at trial. We do not have the authority to appoint counsel, and our review of a lawyer's performance at trial is severely circumscribed by the *Strickland* standard, which effectively insulates lawyers' errors from appellate review. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).