**Joe Bill BONE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–98–00937–CR.**

Court of Appeals of Texas, San Antonio.

Nov. 24, 1999.

David J. Eveld, Moore, Pape & Dwyer, L.L.P., Seguin, for Appellant.

Frank Follis, Asst. Dist. Atty., Seguin, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

Appellant, Joe Bill Bone, was convicted by a jury of felony driving while intoxicated and sentenced to 90 years. The punishment was enhanced by two prior felonies under the Habitual Felon Statute. He now asserts that his trial defense counsel displayed deficient performance by: (1) failing to pursue prejudice among prospective jurors; (2) making offensive remarks regarding drinking and driving; (3) failing to offer any significant evidence in his favor during the punishment phase of the trial; (4) offering evidence during the punishment phase of the trial that was harmful to his credibility; (5) failing to make the correct objection to the State's attempt to offer into evidence a document which weighed directly on his credibility; and (6) making statements that affirmatively prejudiced him. We find that trial counsel was deficient, and her deficient performance clearly prejudiced appellant. Because counsel's efforts were so minimal throughout the trial, we reverse and remand.

## Facts and Background

On December 28, 1996, DPS officers Trooper Jeffrey Vajdos and Trooper William Gilliam observed appellant's vehicle traveling east, crossing over the yellow center stripe of Highway 90. The officers pulled him over on suspicion of driving while intoxicated and he produced a license which had expired on May 25, 1994. The officers testified that he had bloodshot eyes, slurred speech, smelled of alcohol, and he admitted to drinking beers prior to driving. The officers conducted field sobriety tests and determined that he was intoxicated. Appellant was arrested and taken to Guadalupe County Jail where he declined to take a breath test and was video taped.

At trial, the State presented the troopers' testimony and a copy of the video tape. Appellant was the sole witness for the defense. With counsel's assistance, he presented two inconsistent theories of defense: (1) that he should be believed because he is a compliant career criminal who has spent much of his life in prison without ever requesting a jury trial, and (2) that he was more believable than the two troopers. The two prior convictions for driving while intoxicated were stipulated to by counsel, and after the jury found him guilty of felony driving while intoxicated, appellant pled "true" to the conviction of felony burglary in 1978 and "true" to the conviction of felony possession of a prohibited weapon in 1993. At punishment the State offered no new evidence and re-offered all evidence heard in the guilt and innocence phase of the trial. Appellant and Juanita Barnhill testified on his behalf. The jury assessed punishment at 90 years, from a possible range of 25–99 years.

## Standard of Review

To prove ineffective assistance of counsel, appellant must show: (1) trial counsel's performance was deficient in that counsel made such serious errors he or she was not functioning effectively as counsel; and (2) the deficient performance prejudiced the defense to such a degree that the defendant was deprived of a fair trial. See *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The constitutional right to effective assistance does not mean errorless counsel. See *Brown v. State*, 974 S.W.2d 289, 292 (Tex.App.-San Antonio 1998, pet. ref'd). Appellant must overcome the presumption that trial counsel rendered adequate assistance, and it is incumbent on the defendant to identify those acts or omissions which do not amount to reasonable professional judgment. See *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052.

We judge whether appellant meets the *Strickland* standard by review-

ing the "totality of the representation" rather than the isolated acts or omissions. *See Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex.Crim.App.1986). The *Strickland* test is applied without the benefit of hindsight, and the allegations will be sustained only if they are affirmatively established in the record. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). Recently, we have received additional guidance from the Court of Criminal Appeals in *Thompson v. State*, 9 S.W.3d 808 (Tex. Crim.App.1999), "an appellate court should be especially hesitant to declare counsel ineffective based on a single alleged miscalculation during what amounts to otherwise satisfactory representations, especially when the record provides no discernible explanation of the motivation behind counsel's actions." *Id.* at 813. Apparently, "the substantial risk of failure" that accompanies an appellant's claim of ineffective assistance on direct appeal is increasing. *Id.* at 813. Nevertheless, even under this stringent burden, ineffectiveness of counsel does exist when the effect of trial counsel's errors undermines the concept of a fair trial. *See Brown*, 974 S.W.2d at 292. Unlike *Thompson* where the record on direct appeal was simply undeveloped and cannot adequately reflect the failings of trial counsel, this record reveals a total absence of advocacy skills and even the minimum effort expended on appellant's behalf was misguided.

## Ineffective Assistance of Counsel

■ Trial counsel was deficient during voir dire. Counsel failed to make any inquiries that would shed light on whether any of the jury members were biased. In attempting to discover bias, counsel is expected to determine if any prospective juror either knew or was related to the prosecutor or any of the State's witnesses. *See Montez v. State*, 824 S.W.2d 308, 310 (Tex.App.-San Antonio 1992, no pet.). Counsel asked whether the prospective jurors knew the prosecutor conducting voir

dire, Mr. Kirkendall, but did not ask whether any juror knew Mr. Follis, the prosecutor who argued for the State at trial. One prospective juror, Mr. Frels, admitted to having an association with Mr. Kirkendall through the little league in Seguin, and trial counsel failed to ask Mr. Frels if that would keep him from giving a fair and honest verdict. Trial counsel also failed to ask if any of the prospective jurors were connected with law enforcement. In addition, no questions were asked to prospective jury members concerning whether they drank, or if they were involved in any organizations that would suggest bias, such as Mothers Against Drunk Driving.

Trial counsel's conduct during voir dire was particularly disturbing in failing to ask specific questions of witnesses who had already shown possible bias in response to the State's questioning. Twenty members of the venire panel raised their hands in response to the State's question whether they or someone they knew were victims of alcohol. Juror Thompson testified that his sister was assaulted by a man who was intoxicated. Five of these individuals, including Juror Thompson, were selected to the jury. Trial counsel was deficient in not making further individual inquiries in order to weed out possible bias. *See Montez*, 824 S.W.2d at 310.

■ In addition to showing that trial counsel's performance was deficient, appellant must also show prejudice. *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. When considering prejudice to appellant resulting from voir dire, the standard is whether the individual jurors identified would be challengeable for cause based on the statements complained of in the record. *See McFarland v. State*, 928 S.W.2d 482, 503 (Tex.Crim.App.1996). All jurors were asked by the State individually if they could be fair and impartial; all jurors said they could. These jurors therefore did not rise to the level of being challengeable for cause. *See Cunningham v. State*,

982 S.W.2d 513 (Tex.App.-San Antonio 1998, no pet.).

Although trial counsel's actions during voir dire do not alone amount to ineffective assistance of counsel, they are relevant to the overriding issue: Whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *See Brown,* 974 S.W.2d at 292. Counsel's entire voir dire lasted less than thirty minutes and consisted of a handful of individual questions that were more social than the result of effective trial strategy.

During the punishment phase of the trial, counsel offered the testimony of only the appellant and Juanita Barnhill. In all, the testimony elicited and the evidence brought forth by trial counsel during punishment phase lasted less than 30 minutes. Ms. Barnhill's testimony on direct in its entirety:

Q: Ms. Barnhill, if you will for the Court Reporter's record, repeat your name and your address?

A: Juanita Barnhill, 2129 Diego, Joshua, Texas.

Q: How long have you known the Defendant, Joe Bill Bone?

A: Close to two years.

Q: You are aware of the problems that Mr. Bone has had with the law all these years?

A: Yes.

Q: Since you have known him,-Let me rephrase that. In effect, Ms. Barnhill, do you and Mr. Bone have a relationship that operates like a family?

A: Yes, we do.

Q: And are there any children involved?

A: I have two.

Q: And what are their ages?

A: Fifteen and thirteen.

Q: Just briefly, if you will, Ms. Barnhill, describe for the jury how Mr. Bone has interacted with your children since you have known him?

A: He has been a father to my children.

Q: Has he been involved with their school activities?

A: Yes.

Q: In your opinion, has he been a good father to your children?

A: Yes, he has.

Q: Has he attempted to help provide for you and the children?

A: Yes, he has.

Q: Around your children, Ms. Barnhill, what has been Mr. Bone's attitude toward drinking?

A: He doesn't.

Q: Has he talked to your children about drinking?

A: Yes.

Q: In what manner? Don't say what he said, but approving or disapproving of drinking?

A: Disapproving.

Q: To the best of your knowledge, since Mr. Bone was released from prison, has he been going to his parole officer and reporting?

A: Yes, he has.

Q: And how do you know that he does that?

A: I drive him there.

Q Has he been going to meetings where he receives help for his drinking problem?

A: Yes

Q: Do you take part in those meetings as well?

A I drive him there and make sure he gets there.

When the sentencing range (25–99 years) has a variance of 74 years, we find trial counsel's failure to produce more in the way of mitigating evidence on behalf of her client disturbing. For instance, we do not know what his legal or emotional relationship with Ms. Barnhill or her children

is, whether he is a valued father figure, how he has assisted them and could continue to do so if not in prison, whether he has any other positive relationships with family members, or anything about their life together other than he tells the children he disapproves of drinking and attends some unspecified "meetings." Although the evidence exhibited by the prosecution suggests he performs good works such as assisting the disabled, the jury really did not learn anything positive about appellant.

In addition, the evidence trial counsel chose to offer was damaging and prejudicial. Trial counsel offered as evidence a letter from appellant asking the District Attorney to drop the charges against him. In the letter appellant writes that the charges against him should be dropped to "avoid a waste of tax payers' dollars." We are unable to deduce a reasonable trial strategy behind this offer. This letter portrays appellant as callous towards the consequences of his offense and unaware that he has a recurring problem with alcohol.

During the closing argument, counsel emphasized the extreme dangers of drinking and driving and loosely referred to appellant as an unaware drunk. Combined with the letter, counsel has successfully argued that appellant is a dangerous drunk who has yet to accept that he is a danger to society. Considering that this jury is partially composed of persons who have been victims of alcohol, we find trial counsel's acts and omissions during punishment to be without any reasonable strategic basis.

Individually these errors have not shown "a reasonable probability that, but for counsel's unprofessional errors the result would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. However, the "totality of the representation" undermines this court's confidence in the conviction. *See Brown* 974 S.W.2d at 292.

The following errors further illustrate defense counsel's ineffective preparation for, and presentation at trial, and we need not examine whether each instance would, standing alone, require reversal. *Brown,* 974 S.W.2d at 293.

Trial counsel's opening statement:

This is the time Ladies and Gentleman of the jury, that the Defense will have its opportunity to talk to you and all I am going to say in the way of opening statement is that we hope that you will be as attentive to our part of this case as you were to the State's part of the case and we thank you for that attention.

Counsel waived its right to an opening statement at punishment. While brevity can be a professional strategy, looking at the entire case, counsel never presented any capable advocacy skill to suggest this was strategically motivated.

Counsel was also incapable of making a proper objection. During the prosecutor's cross-examination of appellant, counsel objected to the introduction of prior conviction history on the grounds that the prosecutor was bringing forth these offenses "to embarrass the defendant and is not relevant." During the punishment phase counsel objected to the introduction of the "Bailiff's Certificate of Failure to Appear," by stating:

Counsel: Your Honor, I would object as it is incomplete. It is signed the 19th date of March, but it is not filled in on what date or the time nor the Defendant's name [sic].

Mr. Follis: It is out of the Court's own file Judge. It is an official document.

Court: Is that your only objection?

Counsel: Yes, Sir.

Court: It is admitted.

"To embarrass" and "incomplete" were not the proper objections. While not necessarily prejudicial, these improper objections are illustrative of counsel's general ineffectiveness.

Our record reflects that the trial court was at least cognizant of the danger of reversal for ineffective assistance of coun-

sel. After the prosecutor objected that counsel filed the election on punishment late, the court stated, "If I don't let them file it late, I think they are going to have grounds for appeal and ineffective assistance and I am not going to do it. I am going to let them file it."

Ordinarily, when we find ineffective assistance of counsel we are able to identify specific acts or omissions that require reversal. However, here counsel did not have meaningful participation during voir dire, urged nothing during opening statements, failed to offer appropriate objections, filed the jury request late, presented inconsistent defenses, offered questionable mitigation evidence, and in addition engaged in all the deficient representation complained of on appeal. We, and the jury, know very little about appellant apart from his criminal record which was featured by the defense and prosecution during his brief trial. The prosecutor opened the window a bit when he elicited that appellant's father sold alcohol and was a problem drinker. However, nothing was offered by his counsel that could be considered mitigating.

We can no longer rely on the naive assumption that every graduate of a law school is, by virtue of that fact, qualified for courtroom confrontation. Bruce A. Green, *The 10 Most Common Ethical Violations*, Trial, March 1999 at 74. In criminal litigation, "incompetence" has become an institutional problem of legal ethics that demands an institutional solution. *Id.* at 74. This court and the legal profession as a whole must remain committed to the historical principal that "the fair administration of justice requires the availability of competent representation." *Id.* at 74. Accordingly, it does not seem wise to further restrict ineffectiveness challenges just when we see an increase in cases properly seeking this relief. *Gomez v. State*, 9 S.W.3d 189, 194 (Tex.App.-San Antonio, 1999) (Rickhoff, J. concurring).

As our confidence in the judgment of the trial court has been significantly undermined, we reverse the judgment of the trial court.