William MITCHELL, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–96–00643–CR.

Court of Appeals of Texas,
San Antonio.

June 30, 2000.

Michael Stephen Raign, San Antonio, for Appellant.

Mary Beth Welsh, Asst. Crim. Dist. Atty., San Antonio, for Appellee.

Sitting:[1] PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LOPEZ, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice, SARAH B. DUNCAN, Justice.

## OPINION

Opinion by: TOM RICKHOFF, Justice.

On first review of this case a panel of our court found trial defense counsel ineffective for allowing the defendant to appear before the jury in the same distinctive T-shirt worn during the offense, featured on the store video and at the time of arrest. We presumed harm.

The Court of Criminal Appeals vacated our judgement and remanded this cause finding that we erred in presuming prejudice and finding that our analogy to state action "fails" because appellant was not compelled to wear jail clothes.[2] We recognize our error. We have re–analyzed counsel's performance and find both deficient attorney performance and prejudice.

William Mitchell, a borderline mentally retarded defendant, was sentenced to 80 years in prison for aggravated robbery with a deadly weapon after he appeared during voir dire before the jury in the same T-shirt the jury would come to know was worn by the suspect two years earlier during the offense. The T-shirt was the focal point of the trial.

---

1. The court ordered en banc reconsideration of the panel's decision on its own motion. *See* TEX. R. APP. P. 49.7. Justice Karen Angelini did not participate.

2. *See Mitchell v. State,* 974 S.W.2d 161 (Tex. App.-San Antonio, 1998), *vacated,* 989 S.W.2d 747 (Tex.Crim.App.1999).

We again reverse and remand and direct the trial court to appoint new counsel. Counsel's failure to object before jurors saw the defendant in the distinctive outfit worn during the offense, and when arrested, under these facts, constitutes ineffective assistance of counsel. We subject this oversight to a harm analysis and conclude that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

## FACTS

On July 8, 1994, Leigh Ann Russell was working the midnight shift in a Stop–n–Go near Randolph Air Force Base. About 3 a.m. a man she later identified as William Mitchell came in the store. He put some items on the counter, then went to the back of the store and browsed while another customer came in and left. After that customer left, the man brought a 12–pack of sodas to the counter. Russell testified at trial:

A. I rang him up. I totaled him up. That is when he showed me the gun.

Q. Can you show the jury what gesture, if any, he used when he did that?

A. Just raised his shirt, during the whole time he kept going for the gun, making me totally nervous and scared.

Q. Tell the jury exactly where was the gun.

A. In the waistband of his pants.

Q. Can you describe it?

A. It was a light colored—you can tell it was a wooden handle; part of the barrel, you could see, was silver.

Q. Did he ever take that gun out of his waistband and point it at you?

A. Thank God, no.

Q. Did it appear to you to be a toy gun?

A. No, it didn't. It was very real.

Q. Where were you standing when he first showed you the gun?

A. I was behind the register.

Q. What did you do when he did that?

A. I got so scared I couldn't work the keys on the register. I kept messing up before I got the drawer open.

Q. Did he say something at this time?

A. I think he said something like, "See, I have got a gun. Give me your money," or something like that.

* * *

Q. While you were [taking money out of the register], what was he doing?

A. He kept reaching for his gun.

Q. Okay. When you say that, what kind of movement did he make? Describe that for the jury.

A. He was reaching into his waistband and shirt, kept lifting up his shirt like he was going for his gun.

Mitchell was arrested the next day wearing a T-shirt identical to the one worn by the robbery suspect captured on the store's video camera. The investigating detective described it as "a blue colored T. shirt (sic) with writing on it, I believe the writing said Cameron Elementary Scotties and a picture of a Scottish terrier dog." Mitchell was photographed in this T-shirt; this photograph was placed in a photo line-up which the clerk used to identify Mitchell. On the photograph is the hand-written notation, "Same clothes on as he had on in video."

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his fifth point of error Mitchell contends he was denied effective assistance of counsel. The test for ineffective assistance of counsel under the state and federal constitutions are the same, *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim.App.1986), and so we consider them together.

The criteria for assessing ineffective assistance of counsel has been set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* test focuses on reasonableness, measuring the assistance received against the prevailing norms of the legal profession. *Id.* at 690. Counsel is presumed to have rendered adequate assistance, and it is incumbent on the defendant to identify those acts or omissions which do not amount to reasonable professional judgment and are outside the "range of professionally competent assistance." *Id.* To show prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. The key question becomes whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on

as having produced a just result. *See Castoreno v. State*, 932 S.W.2d 597, 604 (Tex.App.—San Antonio 1996, pet. ref'd) citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052. The constitutional right to counsel, whether appointed or retained, does not mean errorless counsel. *Castoreno*, 932 S.W.2d at 604.

Here appellate counsel singles out seven particular shortcomings of trial counsel: 1) failure to preserve error at the jury selection process; 2) failure to preserve error on the question of the photo identification; 3) failure to preserve the photo line-up itself; 4) failure to ask the State for advance notice of its intent to use prior convictions or previous crimes before trial; 5) omission of the definition of "reasonable doubt" in the charge; 6) opening the door to testimony about Mitchell's prior convictions by counsel's own questions; and 7) failure to object to the State's jury argument about the effect of parole laws on Mitchell.

■ While the effectiveness of counsel is ordinarily gauged by the totality of the representation, a single error, if sufficiently egregious, can constitute ineffective assistance. *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex.Crim.App.1991); *See also May v. State*, 722 S.W.2d 699 (Tex.Crim.App.1984) (single error of failure to have defendant's petition for probation sworn sufficient to constitute ineffective assistance). However, a single lapse by counsel is not presumptively prejudicial. *Batiste v. State*, 888 S.W.2d 9, 15 (Tex.Crim.App.1994) (failure to preserve *Batson* error); *see also Ex parte Burdine*, 901 S.W.2d 456, 457 (Tex.Crim.App.1995) (J. Maloney, dissenting) (counsel fell asleep). We find, under the facts of this case, that defendant has affirmatively proven prejudice by a preponderance of the evidence.

■ Just before closing argument, the following exchange took place:

[DEFENSE COUNSEL]: Something has been brought to my attention. I didn't realize until just now that during voir dire Mr. Mitchell was actually wearing those clothes there. He was told by the jail people to put them on and he was brought over here in those clothes. During the entire voir dire he was wearing the exact outfit he is alleged to have been wearing during the commission of the offense. I move for a mistrial because the jurors saw him, they were tainted by seeing him in that outfit.

THE COURT: That is denied. Anything else?

[PROSECUTOR]: For the record, he only had those clothes on during the judge's opening remarks, not during the entire voir dire.

THE COURT: It doesn't matter, anyway. That is the only clothes he had. We can't bring him over in a jail outfit. Those are his clothes.

In our view, this exchange suggests a grievous lack of preparation by Mitchell's counsel. Counsel was either not familiar enough with the videotape which provided the most damning evidence against Mitchell, or was insufficiently in touch with Mitchell, or both. Indeed, bringing him to court in jail garb would be less incriminating than displaying him to the jury panel in the distinctive T-shirt captured on the videotape and at the time of arrest.

■ A more damning inference to be drawn from the record is that this defendant was abandoned by the judicial system. At least one prosecutor suggested knowledge of this miscarriage of justice and yet volunteered nothing. A prosecutor is an officer of the court and has the duty to see that justice is done.

While the State argues that identification was not an issue in this case, we disagree. Though the identity evidence was strong, the record shows defense counsel contested identity up until the very point when the mortifying discovery was made, just before closing argument. She suggested to witnesses on cross-examination that there were certainly more than

one of these shirts and that anyone (presumably her client) could have found this discarded shirt and worn it. Shorn of the ability to contest identity, she was reduced in closing argument to arguing that the evidence did not show beyond a reasonable doubt that Mitchell used a gun during the robbery.

■ This oversight challenges the integrity of our jury system. A defendant in our criminal justice system is entitled to put the State to its proof. TEX. RULES OF PROF.CONDUCT 3.01 cmt. 3, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon Supp.1998). Mitchell's attorney thwarted his attempt to put the State to its proof before it ever got off the ground.

If ever there was a defendant who needed representation, it was Mitchell. The record reflects that Mitchell had a competency trial prior to this trial on the merits. Two psychiatrists examined him and presented reports; one found him competent and the other found him incompetent. The various diagnoses included dysthymia (neurotic depression), atypical psychosis (not in touch with reality), mixed personality disorder with antisocial and schizoid traits, and an inability to communicate with his attorney. They further testified that his tested IQ of about 68 placed him in the upper range of mental retardation. Several suicide attempts, including an attempt to hang himself in jail, were related and after the competency hearing the court told the jury, "This individual has been in the maximum security state hospital for the last 19 years."[3] Dr. Sparks, the psychiatrist for the Bexar County Adult Detention Center, found that he was mentally ill a year before the trial. He speculated that it may have been because he had no father and his mother was sent to prison when he was nine years old resulting in his placement in a foster home. Further, Mitchell's behavior in a separate offense, robbing the neighbor-

hood store where he and his family were known to the victim, while wearing this same T-shirt, demonstrates his profound lack of judgment.

The fact that counsel's objection and motion for mistrial were untimely and did not preserve error simply underscores our conclusion that counsel did not render the effective assistance Mitchell was entitled to and so desperately required. Counsel was aware of all of Mitchell's disabilities from representing him at the competency trial and when he elected to decline a plea bargain. Due to Mitchell's decision errors in the face of strong evidence, counsel was challenged to create a defense.

Nevertheless, the record shows that on the morning of trial the T-shirt was removed from storage, where it had been since he had been arrested two years before, and it was offered to him. One would think he met his defense counsel in that T-shirt before the jurors were called. The time for counsel to object was before jury selection began. One can only wonder what the jurors thought when they first saw the defendant in this shirt, then learned it was worn during the offense and arrest, as if Mitchell could never appear mufti. They later imposed an eighty-year sentence on Mitchell, perhaps because they felt insulted that they invested their time in this case without purpose. We believe this error was one which so permeated the identification process that but for its occurrence the result would have been different.

■ The Supreme Court has held that "courts must be alert to factors that may undermine the fairness of the fact-finding process." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). The probability of deleterious effects on fundamental rights, such as the presumption of innocence which every de-

---

**3.** Mitchell was 27 at the time of the examining trial. This leads us to believe the trial court meant to say "months," not "years."

fendant is entitled to, calls for close judicial scrutiny. *Id.*

We now recognize our situation is not analogous to compelling a defendant to stand trial in a jail uniform because jail personnel would normally be unfamiliar with the underlying facts of the offense the defendant is about to appear for. Naturally the reverse is true for the defense counsel.

We believe our situation is more egregious than compelling a defendant to stand trial in a prison uniform. We note that at the time of *Williams,* in some jurisdictions it was a fairly common practice, and sometimes a tactic employed by defendants to win sympathy. *Williams,* 425 U.S. at 507, 96 S.Ct. 1691 (citing cases). But no stretch of the imagination can paint Mitchell's appearance in these clothes as trial strategy. The defense rested without presenting any evidence and no one explained why Mitchell wore the shirt or changed it.

In the State's petition for discretionary review the State conceded that:

> The error in the instant case may or may not have been 'egregious,' but it was ineffective to not notice and timely object to the defendant appearing for trial in the same T-shirt he wore to commit the offense.... We do believe that the error in the instant case was harmless.

The State relies on the defense theory that he may have found the shirt which "would explain why he was wearing it at trial."

The State also contends the defendant's face was more distinctive than the shirt and that he was on the seven minute videotape, and concludes "—it was simply a mistake, a simple mistake." Regardless of whether it was a mistake, we assess its effect on the verdict. To do so we judge it through the eyes of the factfinder.

In every trial the judge charges jurors that their prime duty is to assess the facts and the credibility of the witnesses. They are cautioned to pay close attention to the trial and we presume they do so. They are entrusted with the most important decisions citizens can make in our society. In Texas this is uniquely so as they also may assess punishment. The defense here was that it was not the defendant in the store. When the trial opened with the defendant in the incriminating T-shirt, this defense, indeed the entire trial, was rendered meaningless. Trial defense counsel's seven sentence opening statement begins:

> If you all will agree to watch the video very carefully, you're going to have to determine there (sic) is some significant differences between Mr. Mitchell and the videotape. In addition, there is a glare coming from outside which makes it hard to see Mr. Mitchell or the person, if it is. And I want you to keep in mind that the clerk who is going to identify Mr. Mitchell, if she does—.

The defense counsel then argues that the assailant on the video did not have a gun. The prosecutor, after "the simple mistake," was able to argue during closing that the complainant identified Mitchell:

> You see him on the videotape. You see a Polaroid of him taken. The very next day, where he is wearing the exact same clothes he was wearing in the videotape. And you have got his clothes. When he was checked in the jail on the next day this is what he was wearing, the same shirt on the videotape. It was definitely William Mitchell. .... Again, remember the clothes, ladies and gentlemen. What a bizarre coincidence to be picked up wearing the exact same clothes the very next day after this.

The only thing more bizarre for the jury is having him appear before them at voir dire in the T-shirt while they are being instructed that he is presumed innocent. The record reveals that the trial court advised Mitchell that he had been offered a plea bargain of forty-five years. Although this was a substantial sentence, if the jury was offered virtually no defense

or mitigation it is difficult to understand why one would choose to have a jury ... particularly for sentencing.

■■■■■ We find that trial counsel's failure to prevent Mitchell from appearing before the jury panel in the clothes worn by the perpetrator in the videotape which recorded the crime permeated the entire proceeding and rendered counsel's assistance ineffective. It was an insult to the jury's intelligence to bring him in wearing the incriminating T-shirt, have him change, and then contend he was misidentified by the witness or was not the assailant in the videotape. Mitchell's fifth point of error is sustained.[4] Because of this disposition, we decline to reach Mitchell's other points of error.

We find defendant has affirmatively demonstrated ineffective assistance of counsel and has affirmatively proven prejudice.

We reverse the finding of the trial court and remand this cause to the trial court for new trial. Additionally, we direct the trial court to appoint new trial counsel.

Dissenting opinion by: SARAH B. DUNCAN, Justice, joined by Justice PAUL W. GREEN.

Now, as on original submission, Mitchell is not entitled to a reversal of the judgment on the ground of ineffective assistance of counsel because a "preponderance of the evidence" in the record does not establish " 'there is a reasonable probability that the result of the trial would have been different absent the deficient conduct.' " *Patrick v. State*, 906 S.W.2d 481, 495 (Tex.Crim.App.1995), *cert. denied*, 517 U.S. 1106, 116 S.Ct. 1323, 134 L.Ed.2d 475 (1996) (quoting *Washington v. State*, 771 S.W.2d 537, 545 (Tex.Crim.App.), *cert. denied*, 492 U.S. 912, 109 S.Ct. 3229, 106 L.Ed.2d 578 (1989)). Now, as on original submission, a preponderance of the evidence clearly establishes the absence of prejudice. As Chief Judge McCormick wrote for a unanimous court:

> Appellant was charged with using a firearm during a robbery at a convenience store. The victim of the robbery identified appellant from a photo spread the day after the robbery. She identified him at trial. She also testified that during the robbery appellant raised his shirt which revealed a gun tucked into the waistband of his pants. The prosecution introduced into evidence a videotape from the convenience store clearly showing appellant committing the robbery and raising his shirt.

4. There appears to be an increase in allegations of ineffective assistance of counsel. In response, the court of criminal appeals has tightened the standard of review. *See e.g. Thompson v. State*, 9 S.W.3d 808 (Tex.Crim. App.1999). In my judgment, this is precisely the wrong response. Intermediate appellate court justices have experience and expertise in evaluating the performance of counsel and are competent to exercise judgment on an issue this subjective. Before appellate review, no participant can stop an obviously ineffective performance by defense counsel. Criminal defendants, usually not part of the most vocal or analytical segments of society, are most often unable to identify ineffectiveness, speak for themselves, and urge a resolution. *See Roe v. Flores–Ortega*, 528 U.S. 1029, ——, 120 S.Ct. 1029, 1040, 145 L.Ed.2d 985 (2000) (Souter, J., dissenting). Trial judges are entirely frustrated. Once counsel is appointed or retained, a trial judge generally lacks authority to unilaterally remove counsel. Trial judges have no formal process for clearly identifying and recording incidents of ineffectiveness. Occasionally, a trial judge will remark on the record that counsel's performance may be deficient. *See e.g., Bone v. State*, 12 S.W.3d 521 (Tex.App.-San Antonio, November 24, 1999, pet. granted). Certainly, the opposing advocate can do nothing. The bar has no effective program to identify, mentor, or eliminate ineffective defense counsel. We all proceed with the fiction that anyone who passes the bar is competent to defend all but capital cases. The result is an institution unable to remedy a problem many recognize as increasing. Our criminal justice system operates on the assumption that both defendant and the State will have able and effective counsel. Unless and until the Court of Criminal Appeals allows intermediate appellate courts a meaningful role in analyzing ineffectiveness claims we will be unable to ensure that this assumption is justified.

*Mitchell v. State,* 989 S.W.2d 747, 747 (Tex.Crim.App.1999). Because the majority errs in "finding" prejudice on this record, I dissent.