James Harmon Jaubert, Jr., aka James Harmon v. State of Texas










WITHDRAWN
10/31/2000




IN THE
TENTH COURT OF APPEALS
 

No. 10-99-090-CR
No. 10-99-091-CR
No. 10-99-092-CR
No. 10-99-093-CR
No. 10-99-094-CR

     JAMES HARMON JAUBERT, JR.,
     AKA JAMES HARMON,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 372nd District Court
Tarrant County, Texas
Trial Court No. 0548270D
Trial Court No. 0594393A
Trial Court No. 0594394A
Trial Court No. 0594396A
Trial Court No. 0594398A
                                                                                                                
   
OPINION ON REHEARING
                                                                                                                
   
      James Jaubert, Jr., pled guilty to one count of murder and four counts of attempted
murder. He elected to have the jury assess punishment. After the punishment hearing, Jaubert
was sentenced to sixty years for the murder charge, twenty years for one attempted murder
charge, and ten years for each additional attempted murder charge. He appeals, asserting only
that trial counsel was ineffective in failing to request that the State give notice of its intent to
offer evidence of extraneous offenses or bad acts. We will reverse the judgment and order a
new punishment hearing.
BACKGROUND
      On March 15, 2000, we issued an opinion affirming Jaubert’s conviction. His only
assertion on appeal was ineffective assistance of counsel, which we declined to review on the
basis that it had not been preserved in compliance with Rule 33.1. See Tex. R. App. P. 33.1. 
Jaubert filed a petition for discretionary review on April 7. On April 13, the Court of
Criminal Appeals issued Robinson v. State, holding that compliance with Rule 33.1 is not
necessary to bring a claim of ineffective assistance of counsel on appeal. Robinson v. State, 16
S.W.3d 808, 813 (Tex. Crim. App. 2000). Thus, we granted rehearing in this cause on our
own motion so that we could address the merits of Jaubert’s complaint. Tex. R. App. P. 50.
RELEVANT FACTS
      Jaubert and fellow gang-members were involved in three drive-by-shootings in Fort Worth
during April 1994 and July 1995. Bullets killed one young man and wounded four others.
Jaubert pled guilty to five separate indictments and elected to have a jury assess punishment. 
During the punishment stage, Jaubert testified about the shootings and presented character
evidence from several witnesses. Jaubert argues that he was ambushed when the State
repeatedly attempted to elicit evidence of extraneous offenses and bad acts. For example,
during the cross-examination of Louis Pedleton, Jaubert’s uncle, the following exchange took
place:
Q.[By Ms. Box, the State’s attorney]: Okay. You just mentioned that the
Defendant’s father has given you an impression of the Defendant’s behavior
and attitude while he’s been in jail; is that correct?
 
A.Yes, ma’am.
 
Q.And did his father also make you aware of a variety of disciplinary actions
this Defendant has had while he’s been in custody?
 
A. No, ma’am.
 
Q. And did you hear from the Defendant’s father, I guess starting with 1995,
that the Defendant, in fact, got into a fist fight back in February of ‘95?
 
A. I heard that something of that nature, someone had – in jail, you know,
things happen in jail.
 
Q. And did he also make you aware of this Defendant’s involvement in a rape
while he was in jail?
 
A. No, he didn’t.

      This testimony was elicited without an objection by Jaubert’s trial counsel. While
questioning Jaubert’s father, the State’s counsel asked the following questions:
Q.And as far as the rape offense in jail, are you aware that your son actually
was the person who slapped the victim so hard he became unconscious?
 
A. No, I was not.
 
Q. Were you aware that the officer that interviewed the victim in that case
observed bruises on the victim’s face and arms and he had hair falling out of
his head?
 
A. No.
 
Q. Are you aware that the victim also had blood coming from his anus?
 
A.No, I was not.
 
Q. Were you aware that the victim told the nurse that he had been beaten and
raped four times in the last week?
 
A. No.
 
Q.Were you aware that the victim was so afraid of your son that he refused to
prosecute this case?
 
A.I was not aware.

      This testimony was also elicited without an objection by Jaubert’s trial counsel. In her
cross-examination of the Defendant, counsel for the State asked the following questions of the
Defendant, not only about the alleged rape, but other incidents of misconduct:
Q. We’ll get back to that conflict in a minute. What I’m asking you is: Do you
recall back on April 11th of 1994, refusing to obey an order of a female
officer over in the jail?
 
A. No, I don’t.
 
Q. Let me ask you about February 12th of 1995. Do you recall hitting another
inmate as he left the shower with your fist?
 
A. No, I don’t.
 
Q. And of course, let’s talk about the April 11th, 1995 rape of Kevin Manning. 
Is it still your position that you were in a different cell at that time?
 
A. Exactly.
 
Q. Okay. There’s no way that you could have participated in that?
 
A. No way possible.
 
Q. Do you recall telling the victim in that case, Mr. Kevin Manning, that, quote,
unquote, “Come here, Bitch, or I’ll kill you”? Do you recall saying that?
 
A. No, ma’am.
 
Q.Do you recall hitting Mr. Manning to such an extent that he passed out and
was unconscious?
 
A. No, ma’am.
 
Q. So it’s your position that you never raped Mr. Manning; is that right?
 
A. That’s right.
 
Q. Never participated in it?
 
A. I never participated.
 
Q. Are you aware that other inmates observed you while this was going on?
 
A. I never participated.

DISCUSSION
      In his sole issue for review, Jaubert contends that his retained trial counsel failed to render
effective assistance of counsel as required by the Sixth Amendment to the United States
Constitution and by Article 1, Section 10 of the Texas Constitution. In particular, Jaubert
argues his trial counsel did not render effective assistance of counsel during the punishment
phase of the trial because he failed to request that the State give notice of its intent to offer
evidence of extraneous offenses or bad acts. Tex. Code Crim. Proc. Ann. art. 37.07 § 3(g)
(Vernon Supp. 2000).
A.  Extraneous Offenses and Bad Acts 
      Article 37.07, section 3(a) permits the court to admit evidence at punishment of extraneous
offenses or bad acts. Id. § 3(a). Evidence admitted under section 3(a) serves to provide the
jury “with all relevant evidence in order to assess fair and appropriate punishment.” Beasley
v. State, 902 S.W.2d 452, 457 (Tex. Crim. App. 1995); Chimney v. State, 6 S.W.3d 681, 697
(Tex. App.—Waco 1999, no pet.). However, through article 37.07, section 3(g), a defendant
can discover if the State intends to offer this type of evidence. Tex. Code Crim. Proc. Ann.
art. 37.07, § 3(g). “The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that
is, trial by ambush.” Chimney, 6 S.W.3d at 693; Nance v. State, 946 S.W.2d 490, 493 (Tex.
App.—Fort Worth 1997, pet. ref’d). “In other words, the purpose is to allow the defendant
adequate time to prepare for the State’s introduction of the [evidence] at trial.” Chimney, 6
S.W.3d at 694. 
B.  Ineffective Assistance of Counsel
      Texas courts adhere, as we must, to the United States Supreme Court’s two-pronged
Strickland test to determine whether counsel’s representation was so inadequate as to violate a
defendant’s Sixth Amendment right to counsel. Strickland v. Washington, 466 U.S. 668, 687,
104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Thompson v. State, 9 S.W.3d 808, 812 (Tex.
Crim. App. 1999). The Court of Criminal Appeals recently held that Strickland applies to the
punishment phase of a noncapital case. Hernandez v. State, 988 S.W.2d 770, 772 (Tex. Crim.
App. 1999).


 
      Strickland requires a defendant to show that: (1) counsel’s representation fell below an
objective standard of reasonableness, and (2) counsel’s deficient performance prejudiced the
defendant. Roe v. Flores-Ortega, 528 U.S.___, 120 S.Ct. 1029, 1034, 145 L.Ed.2d 985
(2000); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The assessment of whether a
defendant received effective assistance of counsel must be made according to the facts of each
case. Thompson, 9 S.W.3d at 813. The appellant bears the burden of proving by a
preponderance of the evidence that counsel was ineffective. Id.
      However, sometimes a single error is so substantial that it alone causes an attorney’s
assistance to fall below the Sixth Amendment standard. Thompson, 9 S.W.3d at 813; Mitchell
v. State, No. 04-96-00643-CR, 2000 WL 867632, at *3 (Tex. App.—San Antonio June 30,
2000, no pet. h.). Courts have frequently found counsel ineffective because of a single error
affecting only the punishment assessed. Ex parte Scott, 581 S.W.2d 181, 182 (Tex. Crim.
App. 1979); Cooper v. State, 769 S.W.2d 301, 305 (Tex. App.—Houston [1st Dist.] 1989,
pet. ref’d); May v. State, 660 S.W.2d 888, 890 (Tex. App.—Austin 1983), aff'd, 722 S.W.2d
699 (Tex. Crim. App. 1984); Burnworth v. State, 698 S.W.2d 686, 690 (Tex. App.—Tyler
1985, pet. ref'd). To ignore a grievous error simply because it is single, while granting relief
where multiple errors cumulatively reach the same magnitude, would be contrary to the
reasons that caused the creation of the doctrine of ineffective assistance of counsel. Valencia
v. State, 966 S.W.2d 188, 191 (Tex. App.—Houston [1st Dist.] 1998, pet. ref’d).
C.  Analysis 
      Jaubert argues his trial counsel was ineffective when he failed to request that the State give
notice of its intent to offer evidence of extraneous offenses or bad acts. Tex. Code Crim.
Proc. Ann. art. 37.07, § 3(g). The State claims that Jaubert has failed to overcome the
presumption that his trial counsel’s conduct might be considered sound trial strategy. 
      1.   Objective Standard of Reasonableness 
      When reviewing a claim of ineffective assistance of counsel under the first prong, there
exists a strong presumption that defense counsel's conduct was reasonable and constitutes
sound trial strategy. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. We evaluate the totality
of the representation from counsel's perspective at trial, rather than counsel's isolated acts or
omissions in hindsight. Gutierrez v. State, 8 S.W.3d 739, 749 (Tex. App.—Austin 1999, no
pet.). Appellant has the ultimate burden to overcome this presumption and demonstrate not
only that counsel's performance was unreasonable under the prevailing professional norms, but
that the challenged action was not sound trial strategy. Id.
      The State first argues that trial counsel was effective, because he participated in voir dire,
cross-examined State’s witnesses, presented witnesses for his defense, and filed eight motions. 
However, the Court of Criminal Appeals has held that this level of participation alone is not
sufficient to show that counsel acted reasonably. Ex parte Walker, 794 S.W.2d 36, 37 (Tex.
Crim. App. 1990). In Walker, although counsel gave competent advice about who should have
assessed punishment, he failed to effect his client’s wishes by neglecting to file the motion to
elect prior to trial. Id. at 36-37. The Court held that even though the trial court had made
findings that counsel had filed numerous pre-trial motions, conducted voir dire, cross-examined the State’s witnesses, made numerous objections, made arguments at both phases of
the trial, preserved the defendant’s right to appeal, investigated the facts of the case, and
discussed the law with the defendant, this single error rendered his assistance ineffective. Id. 
at 37.
      The State further claims that, due to the absence of reasons in the record for counsel’s
conduct, Jaubert has failed to overcome the presumption that his trial counsel’s conduct might
be considered sound trial strategy. Here, due to counsel’s failure to request notice, Jaubert and
his character witnesses were ambushed when the State repeatedly attempted to elicit evidence
of extraneous misconduct including the rape of a jail inmate by Jaubert. In addition, counsel
never requested a preliminary determination on the admissibility of the extraneous evidence
and on several instances State’s counsel was permitted to question witnesses without objection. 
As a result of failing to request the notice to which he was entitled, Jaubert’s trial counsel was
not adequately prepared for the State’s introduction of the evidence at trial. See Chimney, 6
S.W.3d at 694. Consequently, Jaubert’s trial counsel’s failure to request notice under Article
37.07, section 3(g) was unreasonable and cannot be justified by any trial strategy within our
imagination. Strickland, 466 U.S. at 689, 104 S.Ct. at 2065; see Valencia, 966 S.W.2d at
191.
      2.   Prejudice
       The second prong of Strickland requires a showing that counsel's errors were so serious
that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland,
466 U.S. at 687, 104 S.Ct. at 2064; Mallet v. State, 9 S.W.3d 856, 866 (Tex. App.—Fort
Worth 2000, no pet.). A defendant must show there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different. 
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068. A reasonable probability is a probability
sufficient to undermine confidence in the outcome. Id. at 669, at 2056.
      We hold that this single error was of a magnitude significant enough to render Jaubert’s
counsel ineffective. Thompson, 9 S.W.3d at 813; Mitchell, 2000 WL 867632, at *3. The
adversarial process broke down at the punishment stage in this case. See Mitchell, 2000 WL
867632, at *4. The record is silent about who fired the fatal shot that killed the young man. 
Jaubert presented testimony from a number of character witnesses. However, their testimony
about his character was overshadowed by evidence of extraneous misconduct, particularly as it
related to the rape incident. Consequently, there is a reasonable probability that but for the
attorney’s error Jaubert’s sentence would have been less. Strickland, 466 U.S. at 694, 104
S.Ct. at 2068; see Valencia, 966 S.W.2d at 190. As a result, counsel's error was so serious
that it deprived Jaubert of a fair punishment hearing. Strickland, 466 U.S. at 687, 104 S.Ct. at
2064.
CONCLUSION
      Under the circumstances, we conclude that Jaubert has overcome the presumption that his
trial counsel’s conduct, during the punishment phase, was trial strategy. Accordingly, we find
that his counsel failed to render effective assistance as required by the Sixth Amendment to the
United States Constitution and by Article 1, Section 10 of the Texas Constitution. Therefore,
because the error occurred during the punishment phase, we reverse the judgment and remand
the cause to the trial court for a new punishment hearing in accordance with Article 44.29(b) of
the Code of Criminal Procedure. Tex. Code Crim. Proc. Ann. art. 44.29(b) (Vernon Supp.
2000); Ex parte Welch, 981 S.W.2d 183, 185-86 (Tex. Crim. App. 1998).
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis
      Justice Vance, and
      Justice Gray
Reversed and remanded
Opinion delivered and filed August 31, 2000
Publish