Concurring opinion by:
TOM RICKHOFF, Justice.
Sadly, for this panel, this tragic case is all too memorable.[1] Now, following this young mother’s conviction and sentence to life in prison for capital murder of her baby by starvation, we are asked whether the denial of an evidentiary hearing, by the trial judge who presided over both causes just five months apart, was an abuse of discretion.
I have long felt that trial courts are self-constrained when faced with ineffectiveness of counsel challenges and that intermediate appellate courts are hampered by a standard of review that is too rigid. See Mitchell v. State, 23 S.W.3d 582 (Tex.App.—San Antonio 2000, pet. ref'd); Bone v. State, 12 S.W.3d 521 (Tex.App.—San Antonio 1999, pet. granted); see also State v. Zapata, No. 04-00-00238-CR, 2001 WL 80466 (Tex.App.—San Antonio Jan. 31, 2001, no pet. h.) (Rickhoff, J., concurring) (not designated for publication) (“My deep concern that ineffective assistance of counsel issues are rarely acted on by trial judges is relieved by the vigilance and fairness of this trial judge. It remains, however, too difficult for our intermediate appellate judges to intervene.”). We recognize we are expanding our reach by considering Dr. Clarke’s unsworn correspondence. But, in the termination case, this same trial judge considered Dr. Clarke’s testimony to be important enough to engage him in the following colloquy from the bench when the judge was seeking to determine whether this defendant endangered this baby:[2]
Q: ... Is your testimony that this baby was fed properly, but that the baby’s system did not absorb the nutrient from the food it was being fed and it died? There’s nothing you can do about it. This baby had a system that couldn’t absorb food and so it was going to die?
A: That’s exactly what I’m saying.
Q: So if you take the baby to the hospital, there’s nothing much the doctors can do about a baby that has a situation like this?
A: I think that there is some things. They would not have seen the diagnosis. They would not have seen it. Whether they could have come up with some hit-or-miss source of therapies, I think that’s a possibility.
Q. You know, my situation is I’m looking at a parent or a couple of parents that have a child that hasn’t gained any weight and the pictures look something out of a Third World country, and whether or not a reasonable parent, somebody that we think is doing what they’re sup *5 posed to do in taking care of someone in their care, would have taken this child in and said, “Let’s figure out why this child is not gaining weight, why its ribs are showing and its skull looks like a death mask.” Should they have taken this child in, even though you say there is nothing they can do about it, if it’s going to die?
A: I think that’s a reasonable expectation, yes.
Q. All right. The pictures look pretty bad.
A. I agree.
As a former trial judge myself I have heard hundreds of termination and murder cases. While the evidence may be the same in each and the consequences for the parent equally dire, the intent element and the burden of proof (substantial evidence to reasonable doubt) are very different. From my review of this record the missing evidence here could be determinative.

. In In the Interest of P.P., No. 04-99-00729-CV, 2000 WL 33142404 (Tex.App.—San Antonio Nov. 22, 2000, no pet.), we considered the termination of this defendant’s parental relationship with her surviving children and found the evidence of endangerment was "more than sufficient.”

. The testimony of Dr. Clarke and Dr. Teran-Garcia in the termination case occurred on July 2, 1999. The judgment in the criminal trial was signed by the same judge on February 5, 1999, almost six months earlier. The motion for new trial in this criminal case was filed on March 5, 1999.