Robert Mont THOMAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–94–00703–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 17, 1995.

Kelly McClendon, Angleton, for appellant.

Jerome Aldrich, David Bosserman, Angleton, for appellee.

Before OLIVER–PARROTT, C.J., and O'CONNOR and TAFT, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

Appellant, Robert Mont Thomas, was charged by indictment with the felony offense of engaging in organized criminal activity. Appellant pled no contest without a plea bargain agreement, and the trial court sentenced him to 16–years confinement. In a single point of error, appellant challenges the effectiveness of his trial counsel. We reverse and remand for a new punishment hearing.

### Background

On June 3, 1993, appellant was charged by indictment with the felony offense of engaging in organized criminal activity. Appellant pled no contest without a plea bargain agreement. During the punishment phase, testimony by several witnesses revealed many extraneous offenses and bad acts including prior convictions, pending charges, and current investigations into alleged criminal conduct by appellant. Both appellant and the State elicited evidence of these offenses. Counsel for appellant did not object to evidence of any of the extraneous offenses and bad acts. Appellant applied for and proved eligibility for probation. The trial court sentenced appellant to 16–years confinement.

### Sole point of error

In his sole point of error, appellant argues that he was denied effective assistance of counsel at the punishment stage of his trial, because his trial counsel (1) did not object to evidence of unadjudicated extraneous offenses, and (2) elicited evidence of unadjudicated extraneous offenses.

■ The State urges us to apply the two-pronged test formulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Unlike allegations of ineffective assistance of counsel at the guilt-innocence stage, however, allegations of ineffective assistance at the punishment stage are governed by the "reasonably effective assistance of counsel" standard. *Ex parte Cruz*, 739 S.W.2d 53, 58 (Tex.Crim.App.1987). This determination is to be made from the totality of the representation of the accused. *Id.* The constitutional right to effective as-

sistance of counsel does not mean errorless counsel, or counsel whose competency is to be judged by hindsight. *Id.* Rather, the right to effective assistance of counsel entitles appellant to counsel "reasonably likely to render and rendering reasonably effective assistance." *Ex parte Duffy*, 607 S.W.2d 507, 514, n. 14 (Tex.Crim.App.1980). In order for appellant to prevail, allegations of ineffective assistance of counsel must be "firmly grounded in the record." *Powers v. State*, 727 S.W.2d 313 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

Appellant complains that at the punishment hearing, trial counsel either elicited or failed to object to evidence that appellant: had stolen a white Beretta automobile and a GMC pickup truck; was investigated for child pornography, solicitation to commit capital murder, and solicitation to injure police officers; had been charged with misdemeanor driving while intoxicated and numerous traffic offenses; was involved in the theft and interstate transport of other vehicles; was under investigation by both the DPS and FBI; and stalked and made threats against police officers.

■ In determining whether counsel rendered deficient performance, the first issue we must decide is whether the extraneous offenses were objectionable, because an attorney's failure to object to admissible testimony is not ineffective assistance. *Cooper v. State*, 707 S.W.2d 686, 689 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).

■ Prior to September 1, 1993, evidence of unadjudicated extraneous offenses was not admissible during the punishment phase of trials for noncapital offenses. *Grunsfeld v. State*, 843 S.W.2d 521, 526 (Tex.Crim.App. 1992). On September 1, 1993, the Texas Legislature amended article 37.07 to allow admission of unadjudicated extraneous offenses at the punishment trial of noncapital offenses. TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1995). This amendment to article 37.07 applies only to trials for offenses committed on or after September 1, 1993. *Voisine v. State*, 889 S.W.2d 371, 372 (Tex.App.—Houston [14th Dist.] 1994, no writ). Appellant committed the of-

fense in the instant case in October 1992. Thus, the 1993 amendment to article 37.07 does not affect this case, and evidence of unadjudicated extraneous offenses was not admissible. *Grunsfeld,* 843 S.W.2d at 526; *Voisine,* 889 S.W.2d at 372.

■ Having determined that the extraneous offenses were objectionable, our next inquiry is whether counsel's failure to object constituted plausible trial strategy. The State points out that most of the extraneous offenses were contained in the presentence investigation report. Thus, the State argues, it was plausible trial strategy for counsel to refrain from objecting to the offenses in the PSI. The State's argument appears to be that if counsel had objected to the evidence, she "would have had no opportunity to cross examine the sources of information in the [PSI].... In addition, ... there is no harm in that most of the information objected to was presented to the court in the form of the [PSI]." Contrary to the State's argument, however, the mere fact that these offenses were contained in the PSI report did not relieve counsel from the duty of objecting. *See Spriggs v. Collins,* 993 F.2d 85, 89–90 (5th Cir.1993) (holding that trial counsel was deficient for failing to object to unadjudicated extraneous offenses in the PSI report).

■ We do not need to decide whether this could have constituted sound trial strategy, however, because we find that counsel was ineffective for not objecting to three particular offenses that were not in the PSI report: allegations that appellant was under investigation for solicitation to commit capital murder, for soliciting someone to injure police officers, and allegations that appellant had "stalked" officers and a prosecutor.

With regard to the allegation that appellant had been investigated for solicitation to commit capital murder, the State argues that the witness "did not go into the evidence of these cases." However, the record contradicts the State's position. On direct examination, Detective Robert Shaner testified as follows:

Q: Now, this other case, this conspiracy/solicitation case, what—what was that case in regard to?

A: It was in regards to solicitation to commit capital murder.

Q: And were you contacted by a witness or witnesses or—or, I guess, people that initiated that investigation?

A: Yes, I was.

Q: And what was the information that you had?

A: I had received information that the defendant was stalking a number of officers with the Alvin Police Department and one of the prosecutors of the District Attorney's office.

Q: As a matter of fact, that prosecutor was me, wasn't it?

A: Yes sir, it was.

The State also argues that "counsel gave herself the opportunity to cross examine this witness by not objecting." We disagree that appellant's trial counsel practiced effective trial strategy in allowing hearsay evidence of an offense as serious as solicitation to commit capital murder to be admitted. No competent trial counsel would allow such damaging testimony merely to impeach the witness in front of the judge.

The State also argues that appellant's counsel could not effectively object to some of the evidence because the door had already been opened through prior testimony by other witnesses. Again, however, we must disagree. The record reflects that had counsel been diligent, a timely objection would have excluded the testimony regarding the alleged threats, solicitation of capital murder, and stalking.

■ Counsel for appellant had a duty to object to harmful, inadmissible evidence, and when she neglected that duty, appellant suffered. Although appellant applied for and proved his eligibility for probation, the trial judge assessed his punishment at 16 years of confinement. Counsel's failure to object to inadmissible extraneous offenses allowed the trial court to consider allegations that appellant had threatened police officers, had stalked police officers and the prosecutor, and had solicited the murder of police officers. Clearly, the overwhelming prejudicial

effect of these allegations outweighed any potential benefit of cross-examination.[1]

Accordingly, we sustain appellant's sole point of error.

We reverse appellant's sentence and remand for a new hearing on punishment.

TAFT, Justice, dissenting.

To the majority's finding of ineffective assistance of counsel, I respectfully dissent.

### Ineffective Assistance of Counsel

In his sole point of error, appellant argues that he was denied effective assistance of counsel at the punishment stage of his trial, because his trial counsel: (1) did not object to evidence of unadjudicated extraneous offenses; and (2) elicited evidence of unadjudicated extraneous offenses.

Appellant complains, in some 13 particulars, that trial counsel either elicited or failed to object to evidence that appellant: (1) had stolen a white Beretta automobile and a GMC pickup truck; (2) was investigated for child pornography; (3) was investigated for solicitation to commit capital murder, and solicitation to injure police officers; (4) was always armed; (5) had been charged with misdemeanor driving while intoxicated and numerous traffic offenses; (6) had been stopped on traffic violations 26 times in the last three years; (7) had to be chased by officers stopping him for traffic offenses; (8) was involved in the theft and interstate transport of other vehicles; (9) had been under investigation by both the DPS and FBI; (10) was normally drunk; (11) had an additional charge of unlawfully carrying a weapon; (12) was involved in drug dealing; and (13) stalked and made threats against police officers.

#### a. Review of the Totality of Representation

Applying the same standard of review as the majority, I would first consider the totali-ty of representation to see if it is plausible that trial counsel's failure to object to unadjudicated extraneous matters, and even to introduce some, was the result of trial strategy. In making this determination I would consider not only the record of the punishment hearing in this case, but also the record of the plea proceedings in this case and the record from the guilt stage of appellant's trial for failure to stop and render aid (FSRA). The reason for considering the FSRA guilt proceedings is that the punishment hearing in question was a joint punishment hearing for both offenses. All proceedings were conducted before the same trial judge. Examination of the complete record produces the following facts and circumstances pertinent to the effectiveness of trial counsel for appellant:

1. Defense counsel explicitly requested the trial court "that if there are any other matters out there related to this, in other words, another vehicle that allegedly was taken or whatever, we'd request the Court to include that in its sentencing today."

2. During the FSRA trial, defense counsel inadvertently elicited the Alvin police chief's opinion that appellant was merely a mouthy person with a bad attitude *until they started investigating appellant regarding allegations of soliciting capital murder of one of the chief's detectives.* Nevertheless, defense counsel negated the impact of this testimony by showing that no charges had been filed and none were expected to be filed.

3. During the FSRA trial, defense counsel also elicited testimony, intentionally, from the police chief regarding appellant's reports of police harassment. The apparent purpose was to give credence to appellant's admission that one of the reasons he did not remain at the scene of the collision

---

1. The dissent points out that counsel, relying on section 12.45 of the penal code, informed the trial judge that appellant wanted the court to consider the extraneous car thefts in assessing punishment. Tex.Penal Code Ann. § 12.45 (Vernon 1994). Our focus, however, is on appellant's alleged solicitation of capital murder, solicitation to injure police officers, and alleged stalking of officers and a prosecutor. Appellant's trial counsel *did not* inform the judge that appellant wanted the court to consider these offenses when assessing punishment.

was that he was afraid of the police. Among the matters asked was whether a search warrant had been executed to search for pornographic video tapes and whether the police chief had any reason to suspect appellant of being a drug dealer. The answers to both questions tended to show that suspicions about appellant were not founded in fact.

4. At the outset of the joint punishment hearing, defense counsel objected to the State's first witness, one of appellant's 11 co-defendants, on the basis that the State had failed to provide his name on any list of witnesses provided to the defense. Despite the lack of formal notice, defense counsel elicited that the witness' son, another co-defendant, had received deferred adjudication for his role in the offense.

5. While defense counsel did not object when the prosecutor asked an officer about investigations regarding appellant having solicited the capital murder of a police officer and having been involved in kiddie porn, defense counsel was able to demonstrate on cross-examination that the search warrant executed to recover pornographic materials from appellant's possession turned up none and the investigation about soliciting capital murder had been closed without any charges being filed. The officer also could not remember the sources of any information which had prompted the pornography investigation.

6. At one point defense counsel asked the proverbial one question too many by eliciting the reason an investigation had been closed to which the officer responded that it was due to appellant's absence from the State. Nevertheless, defense counsel recovered nicely by asking whether the case had been reopened now that appellant was back in Texas; it had not been reopened.

7. Defense counsel was able to use a State's witness to prove up appellant's non-violent nature.

8. While defense counsel did not object to testimony of allegations that appellant threatened police officers, on cross-examination defense counsel showed again that no charges had culminated from any such investigations.

9. While no objection was made to inferences of interstate links in appellant's stolen car operation, defense counsel showed on cross-examination that there was no proof of any such interstate links.

10. While no objection was made to a claim that appellant admitted he was always armed, defense counsel showed that in the 26 times appellant was stopped by police in the past three years, his car and person had been searched every time and no drugs or guns had ever been found.

11. In a very effective move, defense counsel elicited from the police chief that he had responded to the many complaints of police harassment against appellant, lodged by appellant and his family, by speaking to his officers about making sure to treat appellant professionally; thereafter, the chief received no further complaints!

12. In regard to all of the allegations of threats against police officers, defense counsel was able to show that no such threat had ever been executed.

13. Defense counsel again elicited testimony showing that rumors of appellant dealing drugs were not substantiated, and explained that the source of funds to buy appellant's 1984 Porsche was a settlement from an injury on the job.

14. Defense counsel was able to show that appellant's attitude toward the police chief had always been respectful.

15. Defense counsel utilized the probation officer called by the State to show that appellant had reported regularly

to his Harris County probation officer on the retaliation offense there, for which appellant received deferred adjudication.

16. Defense counsel emphasized the fact that even though vehicles valued at a total of $132,000 had been stolen, the probation officer was only recommending $6,000 in restitution, because the cars had been returned in fairly new condition.

17. Defense counsel called appellant's mother to reiterate the claims of police harassment and establish appellant's medical problems, which would be difficult to handle in prison.

18. The mother of appellant's friend was also called to testify to appellant's good character.

19. When appellant testified, he obviously surprised defense counsel by stating that he was HIV positive, when known medical problems were elicited.

20. There are indications in the record that appellant was very difficult to handle, such as when he insisted that a mistrial be granted due to his perception that the prosecutor was signalling a witness by head motions and then banged his hands on the table when the trial court instructed appellant to remain quiet.

21. Through appellant, defense counsel emphasized that he was stopped by police 26 times in three years, searched each time, but nothing was found and only a couple of convictions for traffic tickets had resulted.

22. The State asked for 30 years punishment for the OCA and five years for the FSRA. Defense counsel asked for probation, although the probation officer who prepared the PSI recommended that probation not be given. The trial court assessed 16 years, and two years, respectively.

### b. Stupidity, Sloth or Strategy?

One of the factors which must be considered in evaluating the strategy followed by defense counsel is that it is oftentimes affected by the wishes of the accused. *See Duncan v. State,* 717 S.W.2d 345, 348 (Tex.Crim. App.1986) (finding no ineffective assistance where trial counsel was attempting to follow the trial strategy thrust upon him by appellant's choice). Here the record reflects that appellant was somewhat difficult to control and that he was insistent on presenting the fact that he had been the victim of police harassment. The admissions which appellant had made to the police also played an important part in molding the defensive strategy.

Where the allegations of ineffectiveness relate to the failure to keep from the fact finder evidence of unadjudicated extraneous offenses and bad acts, it is also important to remember that the fact finder in this case was the trial court. Indeed, it was the same trial court who had heard some of these extraneous matters in the FSRA trial. A trial judge is not as susceptible to being inflamed by unfounded allegations as jurors might have been. This is particularly so in the case of the trial judge in the present case whose well-known experience has rendered him virtually impervious to being inflamed or led astray by such matters.

Under these conditions, I find it impossible to conclude that trial counsel for appellant did not choose a strategy which appeared to her to have the best chance of success. That strategy had to consider both charges, as well as all of the prior misconduct by appellant, and admissions which appellant had already made to the police. This is not a case where there appears to have been no strategy, but only abject ignorance of the law. With the possible exception of the first witness, defense counsel knew the identity of the witnesses called by the State. From the thorough manner in which defense counsel cross-examined each witness, exposing the weaknesses of the testimony where it was adverse to appellant, I can only conclude that counsel had carefully prepared to follow the particular strategy exhibited at trial.[1]

---

1. One of the classic questions from the trial asked a State's witness why it was called stalking when appellant was observed in the vicinity of a police officer's house, but surveillance when a

For every alleged failure to object to extraneous matters, defense counsel came back with what appeared to be a prepared cross-examination exposing the lack of any legitimate basis to the various investigations. As for the extraneous car thefts, defense counsel had informed the trial court from the beginning that appellant wanted any such matters considered in assessing punishment in the present case. This protected her client from being separately prosecuted for them in additional cases.

The majority is particularly concerned about the disclosure of investigations into allegations of solicitation of capital murder. This first came out in the FSRA trial by way of a volunteered answer from the police chief. At the worst, this amounted to no more than an isolated momentary lapse which is insufficient to constitute ineffective assistance of counsel. *Simmons v. State*, 629 S.W.2d 38, 41 (Tex.Crim.App.1982). Nevertheless, trial counsel for appellant recovered and exposed these allegations for their lack of substance.

The burden of establishing ineffective assistance of counsel is upon appellant and such ineffectiveness must be firmly founded on the record. The more I examine the record in this case, the more I am convinced that trial counsel was not ineffective. I would hold that appellant failed to meet his burden of demonstrating that trial counsel was neither reasonably likely to render, nor did she actually fail to render, reasonably effective assistance of counsel in this case.

### Conclusion

Accordingly, I would overrule appellant's sole point of error and affirm the judgment. To the majority's decision holding otherwise, I respectfully dissent.

police officer was observed in the vicinity of appellant's house.