**Reginald V. BROUSSARD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–00–01102–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 10, 2002.

Brett E. Dressler, Weitinger & Dressler, Houston, for Appellant.

Bridget Holloway, Asst. Dist. Attorney-Harris County, Houston, for State.

Panel consists of Justices COHEN, BRISTER,* and SMITH.**

## EN BANC OPINION

SCOTT BRISTER, Justice.

When a convicted criminal asserts that his counsel was ineffective, "only in rare cases will the record on direct appeal be sufficient for an appellate court to fairly evaluate the claim." *Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000). Because we do not believe this is one of those rare cases, we affirm.

### Background

Based on a tip that appellant Reginal Broussard was selling narcotics from his home, Houston Police Officer Stephen Kwiatkowski obtained an arrest warrant for him and a search warrant for his home. That evening, Kwiatkowski led seven other officers in executing the warrants. They entered the home using a battering ram to force open the front door. According to

---

* The Honorable Scott Brister, who became Chief Justice of the Fourteenth Court of Appeals on July 16, 2001, continues to participate by assignment for the disposition of this case, which was submitted on May 7, 2001.

** The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

the officers, after conducting a brief search and finding only Broussard's wife in the house, they postponed further search until he arrived.

Broussard drove up about twenty minutes later. While one of the officers detained him outside his car, Officer Kwiatkowski approached and saw a small rock on the car's console. The rock proved to be cocaine weighing .306 grams.

Upon returning to the house to assist in the search, Officer Kwiatkowski found a clear plastic bag containing another rock on a nightstand in the couple's bedroom. This rock also proved to be cocaine weighing .932 grams. The only other products of the search were $900 and a trace amount of cocaine residue found in a metal box in a small safe,[1] and $988 found on Broussard.

At trial, Broussard's sole witness was his wife, who testified that (1) the officers searched the house extensively before Broussard came home, but never mentioned finding any money or cocaine, (2) she saw no cocaine in the bedroom or in the car before the officers came, and (3) the metal box was not in the safe and did not contain money. Broussard's counsel argued throughout the trial that Officer Kwiatkowski planted the evidence used to convict Broussard.

The jury found Broussard guilty of possessing between one and four grams of cocaine, and the trial court assessed punishment of three years in prison. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (c) (Vernon Supp. 2002).

### Broussard's Counsel

 In issue one, Broussard claims his trial counsel should have moved to suppress the cocaine found in his home because the officers failed to knock and announce their presence before entering. *See Wilson v. Arkansas,* 514 U.S. 927, 929, 934, 115 S.Ct. 1914, 1915, 1918, 131 L.Ed.2d 976 (1995). While we would not characterize such a motion as a "hands-down" winner,[2] we cannot address the ineffectiveness question because of the state of the record.

Although Broussard filed a motion for new trial asserting ineffective assistance of counsel, he never raised the ground he now asserts on appeal. Thus, the record is silent as to why his counsel might have acted as he did. In such circumstances, our duty is clear—we must presume counsel made all significant decisions in the exercise of reasonable professional judgment. *Jackson v. State,* 877 S.W.2d 768, 771 (Tex.Crim.App.1994). The Court of Criminal Appeals has repeatedly held that without a sufficient record, an appellant cannot overcome this presumption, and we cannot conclude counsel was ineffective. *See Chuong Duong Tong v. State,* 25

---

1. Broussard voluntarily gave Officer Kwiatkowski a key from his key ring that opened the safe.

2. Unannounced entry is constitutional when police have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous, futile, or allow the destruction of evidence. *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 1421, 137 L.Ed.2d 615 (1997). In this case, the trial court granted Broussard's motion in limine prohibiting

any mention of what Officer Kwiatkowski learned to support the search warrant. Given this limited record, we cannot know whether one of the exceptions applies. Further, even if there was a violation of the knock-and-announce rule, the United States Supreme Court has not yet decided whether or to what extent the exclusionary rule should be used as a remedy. *See Wilson,* 514 U.S. at 937 n. 4, 115 S.Ct. at 1919 n. 4; *United States v. Ramirez,* 523 U.S. 65, 72 n. 3, 118 S.Ct. 992, 997 n. 3, 140 L.Ed.2d 191 (1998).

S.W.3d 707, 714 (Tex.Crim.App.2000) (holding that "without some explanation as to why counsel acted as he did, we presume that his actions were the product of an overall strategic design"), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001); *see also Thompson v. State,* 9 S.W.3d 808, 814 (Tex.Crim.App.1999); *Jackson,* 877 S.W.2d at 771.

### Broussard's Dilemma

■ Although our review should end here, we write briefly to respond to our colleagues' dissent. In a well-researched opinion, the dissent catalogues a long list of recent cases in which Texas intermediate appellate courts have found counsel ineffective despite a silent record. We agree with the Court of Criminal Appeals (it would hardly matter if we did not, as it is the superior court) that questions of ineffective assistance are better addressed in a postconviction application for a writ of habeas corpus.[3] Nevertheless, we indulge in a bit of speculation to suggest why Broussard's counsel might not be as uninformed as the dissent suggests.

The dissent opines that no trial strategy could explain why Broussard's counsel failed to file a motion to suppress based on the failure to knock and announce. It is true such a motion, if successful, would have dropped the amount of cocaine below one gram, and thus decreasing his punishment in this case. But this was not Broussard's only case.

At the time of trial, Broussard still had three years to serve on parole for two previous convictions for possession of cocaine.[4] During the punishment phase, he admitted knowing his parole might be revoked if he was convicted. Thus, he had more on his mind than reducing a third degree felony to a state jail felony—if he was found guilty of *anything,* he was going back to prison. It is perfectly plausible that Broussard could have decided to risk a stiffer sentence in this case[5] for the possibility of getting none at all.

But how to do that? There was no dispute the substance in both Broussard's car and home was cocaine, and there was little hope of proving it belonged to someone else. Broussard's only possible defense was that the cocaine had been planted in both locations by Officer Kwiatkowski. In his closing argument, defense counsel pointed out that four other officers searched the house and one other approached the car, but only Kwiatkowski spotted cocaine in either place. Given this defense strategy, Broussard's counsel could have decided he needed to show that Kwiatkowski found cocaine every-

---

**3.** *See, e.g., Thompson,* 9 S.W.3d at 814–15 (holding ineffectiveness should be considered at hearing dedicated to considering all facts, circumstances, and rationale behind counsel's actions, including opportunity to explain why no objection was made in trial court).

**4.** In 1991, Broussard pleaded guilty to a first degree felony possession charge and was placed on probation for eight years. In 1994, he pleaded guilty to a second degree felony charge, at which time his probation was revoked and he was sentenced to ten years in prison. According to his testimony during the punishment phase of the trial, Broussard served three of those years in prison, had

been out on parole for several years, and still had three years left to serve.

**5.** The penalty for possession of less than one gram of cocaine is confinement for 180 days to two years. Tex. Health & Safety Code Ann §§ 481.102(3)(D), .115(a), (b) (Vernon Supp. 2002); Tex. Penal Code Ann. § 12.35(a) (Vernon 1994). The penalty for possession of more than one gram but less than four grams of cocaine is confinement for two years to ten years. Tex. Health & Safety Code Ann. §§ 481.102(3)(D), .115(a), (c) (Vernon Supp. 2002); Tex. Penal Code Ann. § 12.34(a) (Vernon 1994). The punishment assessed by the trial court in this case was three years.

where he looked. If only Kwiatkowski saw cocaine when other officers were present, better for the defense if this happened not once but twice.

Additionally, Broussard had good reason to emphasize the aggressive conduct of the police under Kwiatkowski's direction— eight officers wearing bulletproof vests battering down the door of his home only to find no one inside but his innocent wife. The officers' presence inside for an extended period of time before he arrived supported his theory that incriminating evidence was planted. If this cocaine were suppressed, the defense would need to explain why, despite this golden opportunity, Kwiatkowski chose to plant cocaine only outside in the car. If the dissent's hypothetical motion to suppress had been granted, Broussard's rogue-cop theory would have been less tenable.

Finally, reasonable trial counsel might have had one more concern about suppressing this evidence. Having heard about the search warrant and entry of Broussard's home, the jury would have been left to guess what, if anything, the officers found. Jurors are not unaware of the exclusionary rule, and some have strong feelings against it. Reasonable trial counsel might fear that, instead of assuming the officers found nothing, some jurors might assume they found *far more* drugs than in fact was the case. Reasonable trial counsel might fear some jurors would allow their suspicions about what was found (but suppressed) to affect their judgment about Broussard's guilt. This would have been improper, but that misses the point—in planning trial strategy, experienced attorneys often take into consideration what jurors shouldn't do, but might.

The dissent criticizes the first of these possible strategies because it is inconsistent with a motion to suppress Broussard's counsel did file four months before trial.

First, we question the assumption that, to be effective, an attorney's strategies must always be consistent. Second, the dissent recognizes our hypothetical presents a reasonable trial strategy, arguing only that it was not *this attorney's* trial strategy. This is asking too much from an undeveloped record. Without evidence or a hearing, we need only suggest why trial counsel might have acted competently; it is Broussard's burden to prove that he did not.

Again, we concede that our speculations may be wrong. It is possible defense counsel had other reasons for not raising the knock-and-announce rule in his motion to suppress. It is possible, as the dissent argues, he didn't know he could. We simply cannot tell. Broussard must raise his claims by applying for a writ of habeas corpus, so that all the facts can be heard and considered.

We overrule issue one. The discussion of the issues two through five does not meet the criteria for publication set forth in Texas Rule of Appellate Procedure 47.4. Accordingly, the remainder of the opinion is not designated for publication.

We affirm the judgment of the trial court.

Justice BRISTER dissented from the panel's decision to reverse the trial court's judgment.

En Banc consideration was requested.

A majority of the Court voted for en banc consideration of the panel's decision. *See id.*

Justice COHEN, dissenting from the decision on en banc consideration, joined by Justice SMITH.

Justice JENNINGS, concurring with the decision on en banc consideration. *See id.*

We affirm the judgment of the trial court.

TERRY JENNINGS, Justice, concurring with decision on en banc consideration.

Although it is true that ineffective assistance of counsel may be shown on direct appeal without evidence of counsel's trial strategy in *"rare"* cases, this is not one of those *"rare"* cases. Here, appellant simply failed to prove by a preponderance of the evidence that his trial counsel was ineffective. *See Thompson v. State,* 9 S.W.3d 808, 813 (Tex.Crim.App.1999). He failed to overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance. *See id.* at 813. I write separately to emphasize the record does not affirmatively demonstrate that appellant's trial counsel failed to take an action in defending his client that no reasonably competent attorney could have believed constituted sound strategy.

Appellant claims that his trial counsel was ineffective for not asserting, as an additional ground for suppressing the cocaine found in his residence, that the officers' "no-knock" entry into his residence violated the Fourth Amendment. Appellant argues that this failure was "objectively deficient" and "cannot be explained by any reasonable trial strategy."

Generally, police officers entering a dwelling to execute a search warrant must knock and announce their identity and purpose before attempting forcible entry. *Wilson v. Arkansas,* 514 U.S. 927, 929, 934, 115 S.Ct. 1914, 1915, 1918, 131 L.Ed.2d 976 (1995). There is no blanket exception to this knock-and-announce requirement for felony drug investigations. *Richards v. Wisconsin,* 520 U.S. 385, 387–88, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615 (1997).[1]

As noted by Justice Thomas in *Wilson,* "the reasonableness of a search may depend in part on whether law enforcement officers *announced* their presence and authority *prior to entering."* *Wilson,* 514 U.S. at 931, 115 S.Ct. at 1916 (emphasis added). The common law rule generally requiring announcement is *"justified in part* by the belief that announcement generally would avoid 'the destruction or breaking of any house ... by which *great* damage and inconvenience might ensue....'" *Id.,* 514 U.S. at 936–37, 115 S.Ct. at 1918 (quoting *Semayne's Case,* 5 Co. Rep. 91a, 91b, 77 Eng. Rep. 194, 196 (K.B.1603)) (emphasis added). It is important to note:

> [N]o precise form of words is required in a case of this kind. It is sufficient that the party hath *notice, that the officer cometh not as a mere trespasser,* but claiming to act under a proper authority....

*Wilson,* 514 U.S. at 932, 115 S.Ct. at 1917 (quoting *Case of Richard Curtis,* Fost. 135, 137, 168 Eng. Rep. 67, 68 (Crown 1757)) (emphasis added). The Court stated as follows:

> We simply hold that although a search or seizure of a dwelling might be constitutionally defective if police officers enter *without prior announcement,* law enforcement interests may also establish

---

**1.** In *Richards,* the Supreme Court upheld as reasonable a "no-knock" entry by police officers because the circumstances showed the officers had a reasonable suspicion that Rich- ards might destroy evidence if given the opportunity to do so. *Richards,* 520 U.S. at 395, 117 S.Ct. at 1422.

the reasonableness of an unannounced entry.

*Wilson*, 514 U.S. at 936, 115 S.Ct. at 1919 (emphasis added).

Thus, in evaluating the reasonableness of the officers' search in this context, the important factor is whether the officers announced their presence and authority prior to entering appellant's residence, not whether they actually knocked on his door.

Although the police officers in this case did not knock or ring a door bell, they did in fact announce their presence and authority prior to entering appellant's residence. This is explicitly shown in the record from the direct examination of Houston Police Officer S.M. Kwiatkowski:

> State: And what happened once you got there?
>
> Officer: We ran up to the front door, I opened the screen door and let Officer Fuller use the battering ram to force the front door of the house open.
>
> State: *Before Officer Fuller*—did he actually use the battering ram?
>
> Officer: He did.
>
> State: *Did you-all make your presence known or did you announce yourself?*
>
> Officer: *Yes. We yelled. When we were running up there we yelled, "police, search warrant."*
>
> State: Okay. *And did you do that in a loud voice?*
>
> Officer: *Yes, I did.*
>
> State: And is that normally—is that procedure for the Houston Police Department?
>
> Officer: Yes, it is.

(Emphasis added.)

The record also contains a photograph, State's Exhibit 3, which shows the front of appellant's residence. It illustrates that, after yelling "police, search warrant" while running up to the house, Officer Kwiat-kowski, in fact, had to stop and open a screen door to allow Officer Fuller onto a screened-in front porch. Only after stopping to have opened the screen door and entering onto the screened-in front porch could the officers reach appellant's front door. By even the most conservative estimate in favor of appellant's position, many seconds transpired from the time the officers yelled "police, search warrant" to the time of actual entry through appellant's front door.

The record also reveals that the "battering-ram" used to force open appellant's door was "a large round piece of metal and plastic" approximately "three or four feet in length." Officer Fuller swung it to strike the door to force it open. The record reveals the only damage caused by the use of the battering-ram was that the "locking mechanism" to the door was "destroyed." It simply cannot be said that "great damage and inconvenience" could have ensued from the precise use of such a tool.

This case is readily distinguishable from *Wilson*, in which "the officers entered the home *while they were identifying themselves*. ..." *Wilson*, 514 U.S. at 930, 115 S.Ct. at 1916. Here, the officers loudly announced their presence and authority prior to entering the residence, putting any occupant on notice that they were coming, not as mere trespassers, but under proper legal authority.

Thus, appellant's argument that his trial counsel was "objectively deficient" for not asserting, as an additional ground for suppressing the cocaine found in the residence, that the officers' "no-knock" entry into the residence violated the Fourth Amendment is without merit. In fact, such an assertion, based on the record, would arguably have been futile.

Further, because appellant failed to litigate the issue fully in a motion for new trial, we do not know if his trial counsel knew of other reasons not to assert the "no-knock" grounds in his motion to suppress evidence. We do not know whether, if counsel had raised it, the State would or could have called other witnesses on the issue; whether, if other witnesses had been called, they would have testified in ways favorable to appellant or the State on the issue; or whether, had such a record been developed, it would have supported appellant's position as a matter of law.

## Conclusion

Appellant's argument can prevail only if his trial counsel's raising the issue below would *necessarily* have resulted in a ground that *undisputedly* should have prevailed. His argument that the "no-knock" entry into his residence violated the Fourth Amendment would arguably, based on the record, have been futile. Thus, his claim that his trial counsel's performance was "objectively deficient" fails. Further, given the uncertainties of this underdeveloped issue, we may not speculate on his trial counsel's strategy. *See, e.g., Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.). Therefore, I concur with the decision of the En

Banc Court affirming the judgment of the trial court.

MURRY B. COHEN, Justice, dissenting to the decision on en banc consideration, joined by Justice JACKSON B. SMITH, JR.

I agree with the majority's opening sentence that "in rare cases," ineffective counsel can be shown on direct appeal without evidence of counsel's trial strategy. Unfortunately, the majority's commendably correct statement conflicts with holdings by at least five courts of appeals, which have held that, before relief can be granted, a record "must" contain evidence of counsel's strategy. Those misstatements of the law should be fully answered, and I will do so now.

### What is the Correct Standard of Review for Ineffective Assistance of Counsel Claims?

The following statement is not now, nor has it ever been, the law:

> The record must contain evidence of counsel's reasoning, or lack thereof, to rebut that presumption [that the challenged acts were sound trial strategy].

*Moreno v. State*, 1 S.W.3d 846, 865 (Tex. App.-Corpus Christi 1999, pet. ref'd). Although that is not the law, many courts of appeals' opinions say it is.[1] They are

1. *See, e.g., Perez v. State*, 56 S.W.3d 727, 731 (Tex.App.-Houston [14th Dist.] 2001, pet. filed); *Cates v. State*, Nos. 12–99–00343–CR to 12–99–00346–CR, 2001 WL 455543 (Tex. App.-Tyler Apr. 30, 2001, pet. ref'd) (designated for publication); *Jones v. State*, 38 S.W.3d 793, 795 (Tex.App.-Houston [14th Dist.] 2001, pet. ref'd); *Grant v. State*, 33 S.W.3d 875, 879–80 (Tex. App–Houston [14th Dist.] 2000, pet. ref'd); *Webber v. State*, 29 S.W.3d 226, 237–38 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd); *Hernandez v. State*, 28 S.W.3d 660, 664 (Tex.App.-Corpus Christi 2000, pet. ref'd); *Davis v. State*, 22 S.W.3d 8, 14–15 (Tex.App.-Houston [14th Dist.] 2000, no pet.); *Kegler v. State*, 16 S.W.3d 908, 911–12, 914 (Tex.App.- Houston [14th Dist.] 2000, pet. ref'd); *Toney v. State*, 3 S.W.3d 199, 209–10 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *White v. State*, 999 S.W.2d 895, 898–900 (Tex.App.-Amarillo 1999, pet. ref'd); *Osorio v. State*, 994 S.W.2d 249, 253 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Rodriguez v. State*, 974 S.W.2d 364, 371 (Tex.App.-Amarillo 1998, pet. ref'd); *Herbst v. State*, 941 S.W.2d 371, 378–79 (Tex.App.-Beaumont, no pet.); *Barker v. State*, 935 S.W.2d 514, 519–20 (Tex.App.- Beaumont 1996, pet. ref'd). Our opinion in *Gamble*, which is cited in some of these cases, did not state that the record must contain evidence of counsel's reasoning in order for a claim of ineffective assistance to succeed. *See*

wrong. The quoted language is an erroneous paraphrase of *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994), which does not say that. Fortunately, some of the same courts that made that erroneous statement have not followed it, at least not always. Instead, they have reversed for ineffective assistance of counsel with no evidence of counsel's reasoning.[2]

This is the law:

> [I]n the rare case where the record on direct appeal is sufficient to prove that counsel's performance was deficient, an appellate court should *obviously* address the claim in the first instance.

*Robinson v. State*, 16 S.W.3d 808, 813 n. 7 (Tex.Crim.App.2000) (emphasis supplied; citing *Thompson v. State*, 9 S.W.3d 808, 814 (Tex.Crim.App.1999); holding that no new trial motion was required to preserve an ineffectiveness claim and remanding for consideration of that claim) (emphasis supplied); *see also Vasquez v. State*, 830 S.W.2d 948, 950, ns. 3, 4, 951 (Tex.Crim. App.1992) (reversing, no evidence of trial strategy). Thus, ineffective assistance of counsel claims should never be *automatically* overruled *solely* because the record contains no evidence of defense counsel's strategy. First, the court must decide if the case before it is "the rare case in which the record on direct appeal is sufficient to prove counsel's performance was deficient...." *Robinson*, 16 S.W.3d at 813 n. 7. In short, the presumption is rebuttable, not conclusive, and the law is clear, especially after *Robinson*, that in "rare cases" (including at least 22 cited below that were decided after *Jackson*), the record on direct appeal will be sufficient to rebut the presumption even without evidence of counsel's reasoning.

An appellant must show that his lawyer was deficient and that, in "reasonable probability," the proceeding's result would have differed but for that deficiency. *See, e.g., Jackson*, 877 S.W.2d at 770–71. A "reasonable probability" does not mean "that counsel's deficient conduct more likely than not altered the outcome in the case...." *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). Rather, "the appropriate standard of prejudice should be somewhat lower." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.; accord Snow v. State*, 697 S.W.2d 663, 666–68 (Tex.App.-Houston [1st Dist.] 1985), *pet. dism'd*, 794 S.W.2d 371 (Tex.Crim.App.1987). A "single egregious error" may constitute ineffective assistance. *Thompson*, 9 S.W.3d at 813. Frequently, it has.[3]

---

*Gamble v. State*, 916 S.W.2d 92, 93 (Tex.App.-Houston [1st Dist.] 1996, no pet.).

**2.** *See Stone v. State*, 17 S.W.3d 348, 350–53 (Tex.App.-Corpus Christi 2000, pet. ref'd) (decided after both *Jackson* and *Moreno*, and reversing for ineffective assistance of counsel without evidence of trial strategy); *Gifford v. State*, 980 S.W.2d 791, 793–94 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *Yzaguirre v. State*, 938 S.W.2d 129, 132–33 (Tex. App.-Amarillo), *rev'd on other grounds*, 957 S.W.2d 38 (Tex.Crim.App.1997) (reversing because appellant failed to show prejudice, not because of lack of evidence on trial strategy), *abrogated on other grounds, Howland v. State*, 990 S.W.2d 274 (Tex.Crim.App.1999).

**3.** *See Ex parte Felton*, 815 S.W.2d 733, 735–36 (Tex.Crim.App.1991); *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex.Crim.App.1979); *Mitchell v. State*, 23 S.W.3d 582, 586–89 (Tex. App–San Antonio 2000, pet. ref'd, pet. granted); *Valencia v. State*, 966 S.W.2d 188, 190–91 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd); *Cooper v. State*, 769 S.W.2d 301, 305 (Tex. App.-Houston [1st Dist.] 1989, pet. ref'd); *Burnworth v. State*, 698 S.W.2d 686, 690 (Tex.

### Texas Cases Reversing Without Evidence of Trial Strategy

In at least 22 cases decided after the Court of Criminal Appeals decided *Jackson v. State*, Texas courts have reversed even though no evidence of trial counsel's reasoning was presented. *See Woods v. State*, 59 S.W.3d 833, 835–38 (Tex.App.-Texarkana 2001, pet. filed); *Mares v. State*, 52 S.W.3d 886, 893 (Tex.App.-San Antonio 2001, pet. ref'd); *Jaubert v. State*, 65 S.W.3d 73 (Tex.App.-Waco 2000, pet. granted) (designated for publication) (recognizing the rule in *Robinson* and reviewing the merits of ineffectiveness claim without evidence of trial counsel's strategy); *Robison v. State*, 35 S.W.3d 257, 265 (Tex.App.-Texarkana 2000, pet. ref'd); *In re R.D.B.*, 20 S.W.3d 255, 258–61 (Tex. App.-Texarkana 2000, no pet.); *Stone v. State*, 17 S.W.3d 348, 350–53 (Tex.App.-Corpus Christi 2000, pet. ref'd) ("[W]e find the record is adequate to show trial counsel's ineffectiveness with regard to admitting the prior murder conviction. The reason for developing a record here would be to ask Stone's attorney what his strategy was in offering the prior conviction evidence through the defendant when it would not come in otherwise. We are convinced that nothing trial counsel could say would make this court believe that it was sound trial strategy to offer the prior conviction under the circumstances here. We are able to determine from the statement of facts from the trial and pre-trial proceedings that counsel rendered ineffective assistance of counsel. Thus, we find the record sufficient in this case. . . . . We believe that where, as here, the record affirmatively demonstrates that counsel took some action in defending his client that no reasonably competent attorney could have believed constituted sound trial strategy, the defendant has shown he received ineffective assistance of counsel."); *Bone v. State*, 12 S.W.3d 521, 524–27 (Tex. App.-San Antonio 1999, pet. granted); *Young v. State*, 10 S.W.3d 705, 715–16, 716 n. 53 (Tex.App.-Texarkana 1999, pet. ref'd), *cert denied*, 528 U.S. 1063, 120 S.Ct. 618, 145 L.Ed.2d 513 (1999); *Brown v. State*, 974 S.W.2d 289, 293–95 (Tex.App.-San Antonio 1998, pet. ref'd); *Ramirez v. State*, 987 S.W.2d 938, 944–46 (Tex.App.-Austin 1999, no pet.); *Gifford v. State*, 980 S.W.2d 791, 793–94 (Tex.App.-Houston [14th Dist.] 1998, pet. ref'd); *Mitchell v. State*, 974 S.W.2d 161, 167 (Tex. App–San Antonio 1998), *vacated and remanded*, 989 S.W.2d 747 (Tex.Crim.App.1999) (remanding for determination of prejudice), *on remand*, 23 S.W.3d 582, 588 (Tex. App–San Antonio 2000, pet. ref'd, pet. granted) (en banc) (San Antonio court reversing, with no evidence presented of trial counsel's strategy); *Yzaguirre v. State*, 938 S.W.2d 129, 132–33 (Tex.App.-Amarillo), *rev'd on other grounds*, 957 S.W.2d 38 (Tex.Crim. App.1997) (reversing because appellant failed to show prejudice, not because of lack of evidence on trial strategy), *abrogated on other grounds*, *Howland v. State*, 990 S.W.2d 274 (Tex.Crim.App.1999); *Greene v. State*, 928 S.W.2d 119, 123–27 (Tex.App.-San Antonio 1996, no pet.); *Owens v. State*, 916 S.W.2d 713, 718–19 (Tex. App.-Waco 1996, no pet.); *Durst v. State*, 900 S.W.2d 134, 141–42 (Tex.App.-Beaumont 1995, pet. ref'd); *Austin v. State*, 899 S.W.2d 834, 838 (Tex.App.-Beaumont 1995), *rev'd on other grounds*, 934 S.W.2d 672 (Tex.Crim.App.1996); *Green v. State*, 899 S.W.2d 245, 248–49 (Tex.App.-San Antonio 1995, no pet.).

App.-Tyler 1985, pet. ref'd); *Snow v. State*, 697 S.W.2d 663, 667–68 (Tex.App.-Houston [1st Dist.] 1985), *pet. dism'd*, 794 S.W.2d 371 (Tex.Crim.App.1987); *May v. State*, 660 S.W.2d 888, 890 (Tex.App.-Austin 1983), *aff'd*, 722 S.W.2d 699 (Tex.Crim.App.1984).

This Court has also reversed, both before and after *Jackson*, without evidence of trial counsel's strategy. *See Valencia v. State*, 891 S.W.2d 652 (Tex.App.-Houston [1st Dist.] 1993), *vacated*, 946 S.W.2d 81 (Tex.Crim.App.1997), *on remand*, 966 S.W.2d 188, 191 (Tex.App.-Houston [1st Dist.] 1998, pet. ref'd) (reversing for ineffectiveness, with no evidence presented of trial counsel's strategy); *Glivens v. State*, 918 S.W.2d 30, 32–34 (Tex.App.-Houston [1st Dist.] 1996, pet. ref'd) (same); *Thomas v. State*, 923 S.W.2d 611, 613 (Tex.App.-Houston [1st Dist.] 1995, no pet.) (same); *Everage v. State*, 893 S.W.2d 219, 222-24 (Tex. App.-Houston [1st Dist.] 1995, pet. ref'd) (same); *Fernandez v. State*, 830 S.W.2d 693, 696–98 (Tex.App.-Houston [1st Dist.] 1992, no pet.) (same); *Cooper v. State*, 769 S.W.2d 301, 305 (Tex.App.-Houston [1st Dist.] 1989, pet. ref'd) (same); *Snow*, 697 S.W.2d at 667 (same).

The case of *Vasquez v. State* is important. 830 S.W.2d at 950 n. 3, 950–51. In *Vasquez*, the Court of Criminal Appeals declared: "Although *Strickland* mandates that we should not second-guess trial strategy, we state without hesitation that the failure to seek an instruction on necessity would not have been acceptable trial strategy under the facts of this case." *Id.* at 950 n. 3. The *Vasquez* Court found counsel ineffective for a single error, reversing this Court's holding to the contrary, even though there was no hearing concerning, and no evidence of, counsel's strategy. *Id.*, 830 S.W.2d at 950, n. 3, 951, n. 4; *id.* at 951 (Benavides, J., dissenting).

We should not presume that counsel had a trial strategy that could not exist. As the Court of Criminal Appeals and the Dallas, Corpus Christi, Texarkana, San Antonio, Beaumont, and Houston (14th) Courts of Appeals have stated, "[W]hen a 'cold record' clearly confirms no reasonable trial counsel could have made such trial decisions, to hold counsel ineffective is not speculation." *Tapia v. State*, 933 S.W.2d 631, 634 (Tex.App.-Dallas 1996, pet. ref'd); *accord Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App.2001) ("Also, in the absence of counsel's reasons for the challenged conduct, an appellate court 'commonly will assume a strategic motivation if any can possibly be imagined,' and will not conclude the challenged conduct constituted deficient performance *unless the conduct was so outrageous that no competent attorney would have engaged in it.*") (citations omitted; emphasis supplied); *Chavero v. State*, 36 S.W.3d 688, 701 (Tex.App.-Corpus Christi 2001, no pet.); *Wilson v. State*, 15 S.W.3d 544, 550 (Tex.App.-Dallas 1999, pet. ref'd); *Young*, 10 S.W.3d at 716 n. 53 (Texarkana); *Chavez v. State*, 6 S.W.3d 66, 71 (Tex.App.-San Antonio 1999, pet. ref'd); *Campbell v. State*, 2 S.W.3d 729, 734 (Tex.App.-Houston [14th Dist.] 1999), *rev'd on other grounds*, 49 S.W.3d 874 (Tex.Crim.App. 2001); *McCoy v. State*, 996 S.W.2d 896, 900 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd); *Ryan v. State*, 937 S.W.2d 93, 98 (Tex.App.-Beaumont 1996, pet. ref'd); *Weeks v. State*, 894 S.W.2d 390, 391, 392 (Tex.App.-Dallas 1994, no pet.); *see also Blount v. State*, 64 S.W.3d 451, 455 (Tex. App.-Texarkana 2001, no pet. h.) (designated for publication) (holding counsel deficient because she could have had no reasonable basis for not objecting to certain inadmissible evidence, despite no evidence of counsel's strategy).

### The Fourth Amendment Law Governing this Case

Officers entering a dwelling generally must knock and announce their identity and purpose before attempting forcible entry. *Wilson v. Arkansas*, 514 U.S. 927, 929, 934, 115 S.Ct. 1914, 1915, 1918, 131 L.Ed.2d 976 (1995). There is no blanket exception to this knock-and-announce re-

quirement for felony drug investigations. *Richards v. Wisconsin,* 520 U.S. 385, 387–88, 117 S.Ct. 1416, 1418, 137 L.Ed.2d 615 (1997). Rather, to justify any no-knock entry, the police must have reasonable suspicion that knocking and announcing their presence would, under the particular circumstances, be dangerous or futile or would inhibit the effective investigation of the crime by, for instance, allowing the destruction of evidence. *Richards,* 520 U.S. at 394, 117 S.Ct. at 1421. Texas courts have applied the rules established in *Wilson* and *Richards. See Stokes v. State,* 978 S.W.2d 674, 676 (Tex.App.-Eastland 1998, pet. ref'd); *see also Robinett v. Carlisle,* 928 S.W.2d 623, 627 n. 5 (Tex.App.-Fort Worth 1996, writ denied).

### The Facts Governing this Case

Of those executing the search warrant, only Officer Kwiatkowski had driven by appellant's home the night before, received the informant's tip, and sworn out the search warrant affidavit. Officer Kwiatkowski testified as follows about the entry:

*Direct Examination:*

State: And what happened once you got there?

Officer: We ran up to the front door, I opened the screen door and let Officer Fuller use the battering ram to force the front door of the house open.

State: Before Officer Fuller—did he actually use the battering ram?

Officer: He did.

State: Did you-all make your presence known or did you announce yourself?

Officer: Yes. We yelled. When we were running up there we yelled, "police, search warrant."

State: Okay. And did you do that in a loud voice?

Officer: Yes, I did.

State: And is that normally—is that procedure for the Houston Police Department?

Officer: *Yes, it is.*

State: *Do you have to ring the bell or knock a couple of times and allow somebody to answer the door before you are allowed, with that legal search warrant, to enter the house?*

Officer: *No, ma'am.*

State: *Okay. Uhm, based on your training and experience, and the policy of the Houston Police Department, would that be feasible, to knock and just simply wait until somebody opened the door?*

Officer: *No, not on a narcotics search warrant, ma'am.*

State: Okay. And this was a felony search warrant; is that correct?

Officer: Yes, that's correct.

State: So Officer Fuller, uhm, after he used the, uhm, battering ram, tell the jury what happened next.

Officer: I then ran inside the residence and I ran into the kitchen area.

State: Okay. And were you the only one to enter the house?

Officer: No. The other officers entered behind me.

State: Okay. Did they enter immediately or was there some pause between the time you went in and the time they went in?

Officer: There was some pause. Like I would go through a doorway, then the other officers would follow suite [sic], go through the doorway, also.

State: Okay. And did you all have your weapons drawn?

Officer: I know that I did. I'm assuming that everybody else did, yes.

State: Is that normal procedure when you're executing a felony search warrant?

Officer: Yes, it is.

State: *Did you have any idea of who was going to be in the house when you entered?*

Officer: *At that point I did not, no.*

State: *Did you have any idea as to whether anybody inside the house was going to have any type of weapons?*

Officer: *No, I did not know at that time.*

State: When you-all approached the house, can you tell us if you observed any type of vehicles in the front yard or the driveway or on the front—uhm, on the street in front of the house?

Officer: *No. The only vehicle I observed there was a white Chevy pickup truck parked directly behind the house. There was [sic] no vehicles in the driveway at that time.*

\* \* \*

*Cross Examination:*

Appellant: And when did you meet with the other officers to, uhm, to plan this raid?

Officer: Approximately a half hour before we actually executed the warrant. . . .

Appellant: *And you were the head of this raid; is that correct?*

Officer: *Yes, sir. It was my search warrant, so I was with the one that supplied all the other officers with information, yes.*

Appellant: What did Sergeant Yencha do?

Officer: He is a supervisor. I mean, I wouldn't—you know, whatever I decided to do, he would be the one ultimately decides yes, we will do it, or no, we'll not do it.

Appellant: *So you're more or less the boss?*

Officer: *I mean—*

Appellant: *Subject to his approval?*

Officer: *Yes, sir, that's correct. . . .*

Appellant: Okay. And, uhm, how do you usually plan a raid? I mean, what are your main concerns as far as police procedure goes?

Officer: Would be how to approach the house and who is going to go inside, who's going to use the battering ram and who's going to go to the rear of the house. . . .

Appellant: *Okay. So when you—when you and the other five officers busted into that house you didn't have any idea who was there; did you?*

Officer: *At that time, no, I did not, sir.*

Appellant: *Uhm, and you didn't have any idea who actually lived there; did you?*

Officer: *No. I mean, I was not sure.*

Appellant: Of your own personal knowledge?

Officer: No, sir.

Appellant: Okay. So, you—uhm, *Officer Fuller busted in the door with the battering ram, and you never, uhm, knocked on the door or rang the doorbell or anything like that; did you?*

Officer: *No, sir, we did not.*

(Emphasis added.)

## Applying the Law to the Facts

Appellant argues that (1) Officer Kwiatkowski's testimony fails the knock-and-announce test as a matter of law; (2) a knock-and-announce suppression ground would thus necessarily have been meritorious; (3) no reasonable trial strategy can therefore explain omitting the knock-and-announce suppression ground; and (4) appellant's offense would have dropped to a state-jail felony had the cocaine in the

home been suppressed. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon 1992). On this record, I agree.

Officer Kwiatkowski's testimony exemplifies the sort of non-specific, blanket justification for failing to knock and announce that the U.S. Supreme Court specifically rejected in *Richards*.[4] *See id.,* 520 U.S. at 387–88, 117 S.Ct. at 1418. Officer Kwiatkowski testified to no particular circumstances that would have given any of the raid officers reasonable suspicion that knocking and announcing here would have been dangerous or futile or would have inhibited their investigation. *See id.* To the contrary, his testimony shows the opposite of this standard: Officer Kwiatkowski was the only raid officer with personal knowledge of the case beforehand; he had no knowledge of who lived there, whether they were home, or whether they were armed; and he described no exigent or other emergency circumstances that would justify the officers' failure to knock and use of a battering ram to enter.

Despite all of this, counsel never challenged the home's search on the ground of failure to knock and announce. What valid trial strategy can explain not raising what

is, on the current record, a hands-down-winning challenge that, if sustained, would have reduced appellant's crime to a state-jail felony[5] and, if overruled, would have preserved a meritorious issue for appeal?[6] There is none.

The State suggests two possible strategies, both of which are patently without merit:

[T]he record shows appellant's attorney vigorously attempted to suppress the search and arrest warrant....

[A]ppellant's counsel also urged a motion in limine requesting supporting probable cause for the issuance of the warrant not be brought before the jury. Because that motion in limine was granted, and the record is void of the information contained in the supporting affidavit, it is very possible that appellant's trial counsel actually had a strategy to not challenging the officers' failure to knock and announce. Moreover, challenging the "no knock" execution might have defeated the purpose behind the motion in limine because the State would have then had the burden to reveal any particularized circumstances that would have justified a no-knock entry—evi-

---

**4.** Police officers in several Texas counties have testified that they violate the rule in *Wilson* and *Richards* in all cases. *See U.S. v. Cantu,* 230 F.3d 148, 154 n. 1 (5th Cir.2000) (Calhoun County). Officer Kwiatkowski testified to a policy of violating *Wilson* and *Richards* in this Harris County case. In both *Cantu* and the present case, the searches occurred long after *Wilson* established the rule. *See also Wickware v. State,* 05–95–01767–CR, 2000 WL 1195682 (Tex.App.-Dallas Aug. 23, 2000, no pet.) (not designated for publication), in which the same testimony was given in a Dallas County case, but the search probably occurred before *Wilson* was decided (notice of appeal filed November 11, 1995, seven months after *Wilson* ). Police officers in Harris County and elsewhere should stop violating the law in this way, and attorneys should object when officers do.

**5.** *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon 1992).

**6.** Even if the motion to suppress would not have been a guaranteed winner, there is at least a reasonable probability it would have been granted, and that is all *Strickland* requires. A "reasonable probability" does not mean "that counsel's deficient conduct more likely than not altered the outcome of the case .... the appropriate standard of prejudice should be somewhat lower." *Strickland v. Washington,* 466 U.S. at 694–94, 104 S.Ct. at 2068. Thus, relief may be granted "... even if the error of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Id.*

dence likely contained in the suppressed [sic] supporting affidavit regarding information supplied by the informant.

First, the fact that counsel vigorously pursued the suppression motion on other grounds does not explain or excuse his omitting the *winning* ground. And defense counsel's vigorous suppression effort shows that, contrary to the en banc majority opinion, it was never defense counsel's strategy to allow all the cocaine into evidence. The en banc majority states that counsel's strategy may have been to let in the cocaine from the house because that would have strengthened appellant's claim that Officer Kwiatkowski planted cocaine in both the house and the car. If that had been defense counsel's strategy, he never would have moved to suppress the cocaine from either the house or the car on *any* grounds. A "vigorous" attempt to suppress either the cocaine in the car or the cocaine in the house would have been wholly inconsistent with the majority's "all or nothing" strategy.

The State's other purported strategy asserts that if appellant had raised the knock-and-announce ground, the search warrant affidavit might have become admissible, thus bringing damaging evidence before the jury. That argument also has no merit because the affidavit contains no evidence that announcing would have proved dangerous or futile or would have inhibited the investigation.[7] And even if that affidavit contained such information, suppression motions are not heard by the jury. *See Russell v. State*, 904 S.W.2d 191, 200 (Tex.App.-Amarillo 1995, pet. ref'd); TEX.R. EVID. 104(a) ("Preliminary questions concerning ... the admissibility of evidence shall be determined by the court ....."); *id.* 104(c) (preliminary hearing "shall be conducted out of the hearing of the jury when the interests of justice so

require or in a criminal case when an accused is a witness and so requests."). Federal constitutional law affords the same protection. *Simmons v. United States*, 390 U.S. 377, 389–94, 88 S.Ct. 967, 973–76, 19 L.Ed.2d 1247 (1968) (search and seizure); *Burgett v. Texas*, 389 U.S. 109, 112–13, 88 S.Ct. 258, 260–61, 19 L.Ed.2d 319 (1967) (denial of counsel); *Ross v. State*, 678 S.W.2d 491, 493 (Tex.Crim.App. 1984) (confession); *Cooper*, 769 S.W.2d at 303–04 (counsel held ineffective for allowing motion to suppress to be heard in jury's presence). Thus, even if counsel had raised the knock-and-announce ground and the State had responded with the affidavit (or other extraneous offense type evidence), the jury would not have seen it.

Nor do I agree with the en banc majority's statement, in footnote two, that the exclusionary rule might not apply here, even if the police violated the knock-and-announce rule. The United States Supreme Court may not yet have decided whether exclusion of the evidence is the proper remedy, but the Texas Legislature has: "No evidence obtained by an officer ... in violation of any provisions of ... the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon Supp.2002). So has the Fifth Circuit. *See United States v. Cantu*, 230 F.3d 148 (5th Cir.2000) (excluding evidence to remedy Fourth Amendment violation of searching house without first knocking and announcing).

I would sustain issue one, reverse the judgment, and remand the cause.

---

7. We granted the parties' agreed motion to supplement the record with the affidavit.